O'SULLIVAN *v.* BOERCKEL

No. 97–2048.   Argued March 30, 1999—Decided June 7, 1999

O'CONNOR, J., delivered the opinion of the Court, in which REHN-QUIST, C. J., and SCALIA, KENNEDY, SOUTER, and THOMAS, JJ., joined. SOUTER, J., filed a concurring opinion, *post*, p. 849. STEVENS, J., filed a dissenting opinion, in which GINSBURG and BREYER, JJ., joined, *post*, p. 850. BREYER, J., filed a dissenting opinion, in which STEVENS and GINSBURG, JJ., joined, *post*, p. 862.

*William L. Browers*, Assistant Attorney General of Illinois, argued the cause for petitioner. With him on the briefs were *James E. Ryan*, Attorney General, and *Michael M. Glick*, Assistant Attorney General.

*David B. Mote* argued the cause for respondent. With him on the brief were *Richard H. Parsons* and *Jeffrey T. Green*.*

JUSTICE O'CONNOR delivered the opinion of the Court.

Federal habeas relief is available to state prisoners only after they have exhausted their claims in state court. 28 U. S. C. §§ 2254(b)(1), (c) (1994 ed. and Supp. III). In this case, we are asked to decide whether a state prisoner must present his claims to a state supreme court in a petition for

---

*Edward M. Chikofsky* and *Barbara E. Bergman* filed a brief for the National Association of Criminal Defense Lawyers as *amicus curiae* urging affirmance.

discretionary review in order to satisfy the exhaustion requirement. We conclude that he must.

## I

In 1977, respondent Darren Boerckel was tried in the Circuit Court of Montgomery County, Illinois, for the rape, burglary, and aggravated battery of an 87-year-old woman. The central evidence against him at trial was his written confession to the crimes, a confession admitted over Boerckel's objection. The jury convicted Boerckel on all three charges, and he was sentenced to serve 20 to 60 years' imprisonment on the rape charge, and shorter terms on the other two charges, with all sentences to be served concurrently.

Boerckel appealed his convictions to the Appellate Court of Illinois, raising several issues. He argued, among other things, that his confession should have been suppressed because the confession was the fruit of an illegal arrest, because the confession was coerced, and because he had not knowingly and intelligently waived his rights under *Miranda* v. *Arizona,* 384 U. S. 436 (1966). Boerckel also claimed that prosecutorial misconduct denied him a fair trial, that he had been denied discovery of exculpatory material held by the police, and that the evidence was insufficient to support his conviction. The Illinois Appellate Court, with one justice dissenting, rejected Boerckel's claims and affirmed his convictions and sentences. *People* v. *Boerckel,* 68 Ill. App. 3d 103, 385 N. E. 2d 815 (1979).

Boerckel next filed a petition for leave to appeal to the Illinois Supreme Court. In this petition, he raised only three issues. Boerckel claimed first that his confession was the fruit of an unlawful arrest because, contrary to the Appellate Court's ruling, he *was* under arrest when he gave his confession. Boerckel also contended that he was denied a fair trial by prosecutorial misconduct and that he had been erroneously denied discovery of exculpatory material

in the possession of the police. The Illinois Supreme Court denied the petition for leave to appeal, and this Court denied Boerckel's subsequent petition for a writ of certiorari. *Boerckel* v. *Illinois*, 447 U. S. 911 (1980).

In 1994, Boerckel filed a *pro se* petition for a writ of habeas corpus under 28 U. S. C. § 2254 in the United States District Court for the Central District of Illinois. The District Court appointed counsel for Boerckel, and Boerckel's counsel filed an amended petition in March 1995. The amended petition asked for relief on six grounds: (1) that Boerckel had not knowingly and intelligently waived his *Miranda* rights; (2) that his confession was not voluntary; (3) that the evidence against him was insufficient to sustain the conviction; (4) that his confession was the fruit of an illegal arrest; (5) that he received ineffective assistance of counsel at trial and on appeal; and (6) that his right to discovery of exculpatory material under *Brady* v. *Maryland*, 373 U. S. 83 (1963), was violated.

In an order dated November 15, 1995, the District Court found, as relevant here, that Boerckel had procedurally defaulted his first, second, and third claims by failing to include them in his petition for leave to appeal to the Illinois Supreme Court. No. 94–3258 (CD Ill.), pp. 4–10. Boerckel attempted to overcome the procedural defaults by presenting evidence that he fell within the "fundamental miscarriage of justice" exception to the procedural default rule. See *Coleman* v. *Thompson*, 501 U. S. 722, 750 (1991). At a hearing on this issue, Boerckel argued that he was actually innocent of the offenses for which he had been convicted and he presented evidence that he claimed showed that two other men were responsible for the crimes. In a subsequent ruling, the District Court concluded that Boerckel had failed to satisfy the standards established in *Schlup* v. *Delo*, 513 U. S. 298 (1995), for establishing the "fundamental miscarriage of justice" exception, and thus held that Boerckel could not overcome the procedural bars preventing review

of his claims. No. 94–3258 (CD Ill., Oct. 28, 1996), pp. 14–15. After rejecting Boerckel's remaining claims for relief, the District Court denied his habeas petition. *Id.*, at 18.

On appeal, the Court of Appeals for the Seventh Circuit considered one question, namely, whether Boerckel had procedurally defaulted the first three claims in his habeas petition (whether he knowingly and intelligently waived his *Miranda* rights, whether his confession was voluntary, and whether the evidence was sufficient to support a verdict) by failing to raise those claims in his petition for leave to appeal to the Illinois Supreme Court. The Court of Appeals reversed the judgment of the District Court denying Boerckel's habeas petition and remanded for further proceedings. 135 F. 3d 1194 (1998). The court concluded that Boerckel was not required to present his claims in a petition for discretionary review to the Illinois Supreme Court to satisfy the exhaustion requirement. *Id.*, at 1199–1202. Thus, according to the Court of Appeals, Boerckel had not procedurally defaulted those claims. *Id.*, at 1202.

We granted certiorari to resolve a conflict in the Courts of Appeals on this issue. 525 U. S. 999 (1998). Compare *e. g., Richardson* v. *Procunier,* 762 F. 2d 429 (CA5 1985) (must file petition for discretionary review), with *Dolny* v. *Erickson,* 32 F. 3d 381 (CA8 1994) (petition for discretionary review not required), cert. denied, 513 U. S. 1111 (1995).

## II

Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court. In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition. The exhaustion doctrine, first announced in *Ex parte Royall,* 117 U. S. 241 (1886), is now codified at 28 U. S. C. § 2254(b)(1) (1994 ed., Supp. III). This doctrine, however, raises a recurring question: What state remedies must a habeas peti-

tioner invoke to satisfy the federal exhaustion requirement? See *Castille* v. *Peoples*, 489 U. S. 346, 349–350 (1989); *Wainwright* v. *Sykes*, 433 U. S. 72, 78 (1977). The particular question posed by this case is whether a prisoner must seek review in a state court of last resort when that court has discretionary control over its docket.

Illinois law provides for a two-tiered appellate review process. Criminal defendants are tried in the local circuit courts, and although some criminal appeals (*e. g.*, those in which the death penalty is imposed) are heard directly by the Supreme Court of Illinois, most criminal appeals are heard first by an intermediate appellate court, the Appellate Court of Illinois. Ill. Sup. Ct. Rule 603 (1998). A party may petition for leave to appeal a decision by the Appellate Court to the Illinois Supreme Court (with exceptions that are irrelevant here), but whether "such a petition will be granted is a matter of sound judicial discretion." Rule 315(a). See also Rule 612(b) (providing that Rule 315 governs criminal, as well as civil, appeals). Rule 315 elaborates on the exercise of this discretion as follows:

> "The following, while neither controlling nor fully measuring the court's discretion, indicate the character of reasons which will be considered: the general importance of the question presented; the existence of a conflict between the decision sought to be reviewed and a decision of the Supreme Court, or of another division of the Appellate Court; the need for the exercise of the Supreme Court's supervisory authority; and the final or interlocutory character of the judgment sought to be reviewed." Rule 315(a).

Boerckel's amended federal habeas petition raised three claims that he had not included in his petition for leave to appeal to the Illinois Supreme Court. To determine whether Boerckel was required to present those claims to the Illinois Supreme Court in order to exhaust his state

remedies, we turn first to the language of the federal habeas statute. Section 2254(c) provides that a habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented." Although this language could be read to effectively foreclose habeas review by requiring a state prisoner to invoke *any possible* avenue of state court review, we have never interpreted the exhaustion requirement in such a restrictive fashion. See *Wilwording* v. *Swenson,* 404 U. S. 249, 249–250 (1971) *(per curiam).* Thus, we have not interpreted the exhaustion doctrine to require prisoners to file repetitive petitions. See *Brown* v. *Allen,* 344 U. S. 443, 447 (1953) (holding that a prisoner does not have "to ask the state for collateral relief, based on the same evidence and issues already decided by direct review"). We have also held that state prisoners do not have to invoke extraordinary remedies when those remedies are alternatives to the standard review process and where the state courts have not provided relief through those remedies in the past. See *Wilwording* v. *Swenson, supra,* at 249–250 (rejecting suggestion that state prisoner should have invoked "any of a number of possible alternatives to state habeas including 'a suit for injunction, a writ of prohibition, or mandamus or a declaratory judgment in the state courts,' or perhaps other relief under the State Administrative Procedure Act").

Section 2254(c) requires only that state prisoners give state courts a *fair* opportunity to act on their claims. See *Castille* v. *Peoples, supra,* at 351; *Picard* v. *Connor,* 404 U. S. 270, 275–276 (1971). State courts, like federal courts, are obliged to enforce federal law. Comity thus dictates that when a prisoner alleges that his continued confinement for a state court conviction violates federal law, the state courts should have the first opportunity to review this claim and provide any necessary relief. *Rose* v. *Lundy,* 455 U. S. 509, 515–516 (1982); *Darr* v. *Burford,* 339 U. S. 200, 204 (1950).

This rule of comity reduces friction between the state and federal court systems by avoiding the "unseem[liness]" of a federal district court's overturning a state court conviction without the state courts having had an opportunity to correct the constitutional violation in the first instance. *Ibid.* See also *Duckworth* v. *Serrano,* 454 U. S. 1, 3–4 (1981) *(per curiam); Rose* v. *Lundy, supra,* at 515–516.

Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts, we conclude that state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process. Here, Illinois' established, normal appellate review procedure is a two-tiered system. Comity, in these circumstances, dictates that Boerckel use the State's established appellate review procedures before he presents his claims to a federal court. Unlike the extraordinary procedures that we found unnecessary in *Brown* v. *Allen* and *Wilwording* v. *Swenson,* a petition for discretionary review in Illinois' Supreme Court is a normal, simple, and established part of the State's appellate review process. In the words of the statute, state prisoners have "the right . . . to raise" their claims through a petition for discretionary review in the State's highest court. § 2254(c). Granted, as Boerckel contends, Brief for Respondent 16, he has no right to *review* in the Illinois Supreme Court, but he does have a "right . . . to raise" his claims before that court. That is all § 2254(c) requires.

Boerckel contests this conclusion with two related arguments. His first argument is grounded in a stylized portrait of the Illinois appellate review process. According to Boerckel, Illinois' appellate review procedures make the intermediate appellate courts the primary focus of the system; all routine claims of error are directed to those courts. The Illinois Supreme Court, by contrast, serves only to an-

swer "questions of broad significance." *Id.*, at 4. Boerckel's view of Illinois' appellate review process derives from Ill. Sup. Ct. Rule 315(a) (1998). He reads this Rule to discourage the filing of petitions raising routine allegations of error and to direct litigants to present only those claims that meet the criteria defined by the Rule. Rule 315(a), by its own terms, however, does not "contro[l]" or "measur[e]" the Illinois Supreme Court's discretion. The Illinois Supreme Court is free to take cases that do not fall easily within the descriptions listed in the Rule. Moreover, even if we were to assume that the Rule discourages the filing of certain petitions, it is difficult to discern which cases fall into the "discouraged" category. In this case, for example, the parties disagree about whether, under the terms of Rule 315(a), Boerckel's claims should have been presented to the Illinois Supreme Court. Compare Brief for Respondent 5 with Reply Brief for Petitioner 5.

The better reading of Rule 315(a) is that the Illinois Supreme Court has the opportunity to *decide* which cases it will consider on the merits. The fact that Illinois has adopted a discretionary review system may reflect little more than that there are resource constraints on the Illinois Supreme Court's ability to hear every case that is presented to it. It may be that, given the necessity of a discretionary review system, the Rule allows the Illinois Supreme Court to expend its limited resources on "questions of broad significance." We cannot conclude from this Rule, however, that review in the Illinois Supreme Court is unavailable. By requiring state prisoners to give the Illinois Supreme Court the opportunity to resolve constitutional errors in the first instance, the rule we announce today serves the comity interests that drive the exhaustion doctrine.

Boerckel's second argument is related to his first. According to Boerckel, because the Illinois Supreme Court has announced (through Rule 315(a)) that it does not want to hear routine allegations of error, a rule requiring state pris-

oners to file petitions for review with that court offends comity by inundating the Illinois Supreme Court with countless unwanted petitions. Brief for Respondent 8–14. See also 135 F. 3d, at 1201. This point, of course, turns on Boerckel's interpretation of Rule 315(a), an interpretation that, as discussed above, we do not find persuasive. Nor is it clear that the rule we announce today will have the effect that Boerckel predicts. We do not know, for example, what percentage of Illinois state prisoners who eventually seek federal habeas relief decline, in the first instance, to seek review in the Illinois Supreme Court.

We acknowledge that the rule we announce today—requiring state prisoners to file petitions for discretionary review when that review is part of the ordinary appellate review procedure in the State—has the *potential* to increase the number of filings in state supreme courts. We also recognize that this increased burden may be unwelcome in some state courts because the courts do not wish to have the opportunity to review constitutional claims before those claims are presented to a federal habeas court. See, *e. g.*, *In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases*, 321 S. C. 563, 471 S. E. 2d 454 (1990); see also *State* v. *Sandon*, 161 Ariz. 157, 777 P. 2d 220 (1989). Under these circumstances, Boerckel may be correct that the increased, unwelcome burden on state supreme courts disserves the comity interests underlying the exhaustion doctrine. In this regard, we note that nothing in our decision today requires the exhaustion of any specific state remedy when a State has provided that that remedy is unavailable. Section 2254(c), in fact, directs federal courts to consider whether a habeas petitioner has "the right *under the law of the State to raise, by any available procedure*, the question presented." (Emphasis added.) The exhaustion doctrine, in other words, turns on an inquiry into what procedures are "available" under state law. In sum, there is nothing in the exhaustion doctrine requiring federal courts

to ignore a state law or rule providing that a given procedure is not available. We hold today only that the creation of a discretionary review system does not, without more, make review in the Illinois Supreme Court unavailable.

Boerckel's amended federal habeas petition raised three claims that he had pressed before the Appellate Court of Illinois, but that he had not included in his petition for leave to appeal to the Illinois Supreme Court. There is no dispute that this state court remedy—a petition for leave to appeal to the Illinois Supreme Court—is no longer available to Boerckel; the time for filing such a petition has long passed. See Ill. Sup. Ct. Rule 315(b). Thus, Boerckel's failure to present three of his federal habeas claims to the Illinois Supreme Court in a timely fashion has resulted in a procedural default of those claims. See *Coleman* v. *Thompson*, 501 U. S., at 731–732; *Engle* v. *Isaac*, 456 U. S. 107, 125–126, n. 28 (1982).

We do not disagree with JUSTICE STEVENS' general description of the law of exhaustion and procedural default. Specifically, we do not disagree with his description of the interplay of these two doctrines. *Post*, at 853–854 (dissenting opinion). As JUSTICE STEVENS notes, a prisoner could evade the exhaustion requirement—and thereby undercut the values that it serves—by "letting the time run" on state remedies. *Post*, at 853. To avoid this result, and thus "protect the integrity" of the federal exhaustion rule, *ibid.*, we ask not only whether a prisoner has exhausted his state remedies, but also whether he has *properly* exhausted those remedies, *i. e.*, whether he has fairly presented his claims to the state courts, see *post*, at 854. Our disagreement with JUSTICE STEVENS in this case turns on our differing answers to this last question: Whether a prisoner who fails to present his claims in a petition for discretionary review to a state court of last resort has *properly* presented his claims to the state courts. Because we answer this question "no," we conclude that Boerckel has procedurally defaulted his claims.

Accordingly, the judgment of the Court of Appeals for the Seventh Circuit is reversed.

*It is so ordered.*

JUSTICE SOUTER, concurring.

I agree with the Court's strict holding that "the creation of a discretionary review system does not, without more, make review in the Illinois Supreme Court unavailable" for purposes of federal habeas exhaustion. *Ante*, at 848. I understand the Court to have left open the question (not directly implicated by this case) whether we should construe the exhaustion doctrine to force a State, in effect, to rule on discretionary review applications when the State has made it plain that it does not wish to require such applications before its petitioners may seek federal habeas relief. The Supreme Court of South Carolina, for example, has declared:

> "[I]n all appeals from criminal convictions or post-conviction relief matters, a litigant shall not be required to petition for rehearing and certiorari following an adverse decision of the Court of Appeals in order to be deemed to have exhausted all available state remedies respecting a claim of error. Rather, when the claim has been presented to the Court of Appeals or the Supreme Court, and relief has been denied, the litigant shall be deemed to have exhausted all available state remedies." *In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases*, 321 S. C. 563, 564, 471 S. E. 2d 454 (1990).

The Court is clear that "nothing in the exhaustion doctrine requir[es] federal courts to ignore a state law or rule providing that a given procedure is not available." *Ante*, at 847–848. Its citation of *In re Exhaustion of State Remedies*, for the proposition that the increased burden on state courts may be unwelcome, should not be read to suggest something more: that however plainly a State may speak its

highest court must be subjected to constant applications for a form of discretionary review that the State wishes to reserve for truly extraordinary cases, or else be forced to eliminate that kind of discretionary review.

In construing the exhaustion requirement, "[w]e have . . . held that state prisoners do not have to invoke extraordinary remedies when those remedies are alternatives to the standard review process and where the state courts have not provided relief through those remedies in the past." *Ante*, at 844 (citing *Wilwording* v. *Swenson*, 404 U. S. 249, 249–250 (1971) *(per curiam)*). I understand that we leave open the possibility that a state prisoner is likewise free to skip a procedure even when a state court has occasionally employed it to provide relief, so long as the State has identified the procedure as outside the standard review process and has plainly said that it need not be sought for the purpose of exhaustion. It is not obvious that either comity or precedent requires otherwise.

JUSTICE STEVENS, with whom JUSTICE GINSBURG and JUSTICE BREYER join, dissenting.

The Court's opinion confuses two analytically distinct judge-made rules: (1) the timing rule, first announced in *Ex parte Royall*, 117 U. S. 241 (1886), and later codified at 28 U. S. C. § 2254(b)(1) (1994 ed., Supp. III), that requires a state prisoner to exhaust his state remedies before seeking a federal writ of habeas corpus; and (2) the waiver, or so-called procedural default, rule, applied in cases like *Francis* v. *Henderson*, 425 U. S. 536 (1976), that forecloses relief even when the petitioner has exhausted his remedies.

Properly phrased, the question presented by this case is not whether respondent's claims were exhausted; they clearly were because no state remedy was available to him when he applied for the federal writ. The question is whether we should hold that his claims are procedurally defaulted and thereby place still another procedural hurdle in

the path of applicants for federal relief who have given at least two state courts a fair opportunity to consider the merits of their constitutional claims. Before addressing that question, I shall briefly trace the history of the two separate doctrines that the Court has improperly commingled.

I

"[T]he problem of waiver is separate from the question whether a state prisoner has exhausted state remedies." *Engle* v. *Isaac,* 456 U. S. 107, 125–126, n. 28 (1982). The question of exhaustion "refers only to remedies still available at the time of the federal petition," *ibid.;* it requires federal courts to ask whether an applicant for federal relief could still get the relief he seeks in the state system. If the applicant currently has a state avenue available for raising his claims, a federal court, in the interest of comity, must generally abstain from intervening. This time-honored rule has developed over several decades of cases, always with the goal of respecting the States' interest in passing first on their prisoners' constitutional claims in order to act as the primary guarantor of those prisoners' federal rights, and always separate and apart from rules of waiver.

In *Ex parte Royall* this Court reviewed a federal trial judge's decision dismissing for want of jurisdiction a state prisoner's application for a writ of habeas corpus. The prisoner, who was awaiting trial on charges that he had violated a Virginia statute, alleged that the statute was unconstitutional. This Court held that the trial court had jurisdiction, but nevertheless concluded that as a matter of comity the court had "discretion, whether it will discharge him, upon habeas corpus, in advance of his trial in the court in which he is indicted." 117 U. S., at 253. Moreover, we held that, even if the prisoner was convicted, the court still had discretion to await a decision by the highest court of the State.

We clarified this abstention principle in *Urquhart* v. *Brown,* 205 U. S. 179 (1907). We stated that the "excep-

tional cases in which a Federal court or judge may sometimes appropriately interfere by *habeas corpus* in advance of final action by the authorities of the State are those of great urgency," *id.*, at 182, that involve the authority of the General Government. Apart from those rare cases presenting "exceptional circumstances of peculiar urgency," see *United States ex rel. Kennedy* v. *Tyler*, 269 U. S. 13, 17 (1925), our early cases consistently applied the rule summarized in *Ex parte Hawk*, 321 U. S. 114, 116–117 (1944) *(per curiam):* "Ordinarily an application for habeas corpus by one detained under a state court judgment of conviction for crime will be entertained by a federal court only after all state remedies available, including all appellate remedies in the state courts and in this Court by appeal or writ of certiorari, have been exhausted."

The 1948 statute changed neither that rule nor its exclusive emphasis on timing. In that year, "Congress codified the exhaustion doctrine in 28 U. S. C. § 2254, citing *Ex parte Hawk* as correctly stating the principle of exhaustion." *Rose* v. *Lundy*, 455 U. S. 509, 516 (1982). The statute as enacted provided that an application for a writ by a state prisoner "shall not be granted" unless the applicant has exhausted his state remedies and, as the amended statute still does today, further provided that the applicant shall not be deemed to have done so "if he has the right under the law of the State to raise, by any available procedure, the question presented." 62 Stat. 967; 28 U. S. C. § 2254(d) (1994 ed., Supp. III). We interpreted this statute in *Rose* as requiring "total exhaustion"—that is, as requiring federal courts to dismiss habeas petitions when any of the claims could still be brought in state court. 455 U. S., at 522. Conversely, of course, if no state procedure is available for raising any claims at the time a state prisoner applies for federal relief, the exhaustion requirement is satisfied.

To be sure, the fact that a prisoner has failed to invoke an available state procedure may provide the basis for a

conclusion that he has waived a claim. But the exhaustion inquiry focuses entirely on the availability of state procedures at the time when the federal court is asked to entertain a habeas petition. Our decision in *Moore* v. *Dempsey*, 261 U. S. 86 (1923), which was cited with approval in *Hawk*, 321 U. S., at 118, illustrates this principle. In that case, the Arkansas Supreme Court had rejected the petitioner's jury discrimination claim because he had asserted it in a motion for new trial that "came too late." 261 U. S., at 93. But, in holding that the Federal District Court should have entertained the claim, we obviously found that the state court's refusal to hear the claim on procedural grounds did not mean that the claim had not been exhausted. When we implicitly overruled *Moore* several years later in *Coleman* v. *Thompson*, 501 U. S. 722 (1991), we did so only on waiver grounds. We explicitly noted that "[a] habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion; there are no state remedies any longer 'available' to him." *Id.*, at 732.

Neither party argues that respondent currently has any state remedies available to him. The Court recognizes this circumstance, see *ante*, at 848, but still purports to analyze whether respondent has "exhausted [his] claims in state court." *Ante*, at 839, 842. Since I do not believe that this case raises an exhaustion issue, I turn to the subject of waiver.

## II

In order to protect the integrity of our exhaustion rule, we have also crafted a separate waiver rule, or—as it is now commonly known—the procedural default doctrine. The purpose of this doctrine is to ensure that state prisoners not only become ineligible for state relief before raising their claims in federal court, but also that they give state courts a sufficient opportunity to decide those claims before doing so. If we allowed state prisoners to obtain federal review simply by letting the time run on adequate and accessible

state remedies and then rushing into the federal system, the comity interests that animate the exhaustion rule could easily be thwarted. We therefore ask in federal habeas cases not only whether an applicant has exhausted his state remedies; we also ask how he has done so. This second inquiry forms the basis for our procedural default doctrine: A habeas petitioner who has concededly exhausted his state remedies must also have *properly* done so by giving the State a fair "opportunity to pass upon [his claims]." *Darr* v. *Burford*, 339 U. S. 200, 204 (1950). When a prisoner has deprived the state courts of such an opportunity, he has procedurally defaulted his claims and is ineligible for federal habeas relief save a showing of "cause and prejudice," *Murray* v. *Carrier*, 477 U. S. 478, 485 (1986), or "'a fundamental miscarriage of justice'" *id.*, at 495.

In the first of our modern procedural default cases, *Francis* v. *Henderson*, 425 U. S. 536 (1976), we held that a state prisoner had waived his right to challenge the composition of his grand jury because he had failed to comply with a state law requiring that such a challenge be made in advance of trial. Our opinion did not even mention the obvious fact that the petitioner had exhausted his state remedies; rather, it stressed the importance of requiring "'prompt assertion of the right to challenge discriminatory practices in the make-up of a grand jury.'" *Id.*, at 541.

Similarly, in *Wainwright* v. *Sykes*, 433 U. S. 72 (1977), we held that the failure to object at trial to the admission of an inculpatory statement precluded a federal court from entertaining in a habeas proceeding the claim that the statement was involuntary. Our opinion correctly assumed that the petitioner had exhausted his state remedies. *Id.*, at 80–81. Our conclusion that waiver was appropriate rested largely on the importance of treating a trial as "the 'main event,' so to speak," and making the necessary record "with respect to the constitutional claim when the recollections of witnesses are freshest, not years later in a federal habeas proceeding."

*Id.*, at 88, 90. In *Engle* v. *Isaac*, 456 U. S. 107 (1982), another case in which the prisoner had unquestionably exhausted his state remedies, see *id.*, at 125–126, n. 28, we held that a claimed constitutional defect in the trial judge's instructions to the jury had been waived because the objection had not been raised at trial.

In *Coleman,* the Court extended our procedural default doctrine to state collateral appellate proceedings. The Court held that an inmate's constitutional claims that he had advanced in a state habeas proceeding could not be entertained by a federal court because his appeal from the state trial court's denial of collateral relief had been filed three days late. The Court, as I noted above, expressly stated that the exhaustion requirement had been satisfied because "there [were] no state remedies any longer 'available' to him." 501 U. S., at 732. But because the State had consistently and strictly applied its timing deadlines for filing such appellate briefs in this and other cases, we concluded that Coleman had effectively deprived the State of a fair opportunity to pass on his claims and thus had procedurally defaulted them.

On the other hand, we have continually recognized, as the Court essentially does again today, *ante,* at 844, that a state prisoner need not have invoked every conceivably "available" state remedy in order to avoid procedural default. As far back as *Brown* v. *Allen,* 344 U. S. 443, 447 (1953), we held that even when a State offers postconviction procedures, a prisoner does not have "to ask the state for collateral relief, based on the same evidence and issues already decided by direct review." We later held that prisoners who have exhausted state habeas procedures need not have requested in state courts an injunction, a writ of prohibition, mandamus relief, a declaratory judgment, or relief under the State Administrative Procedure Act, even if those procedures were technically available. *Wilwording* v. *Swenson,* 404 U. S. 249 (1971) *(per curiam).* Federal courts also routinely and cor-

rectly hold that prisoners have exhausted their state remedies, and have *not* procedurally defaulted their claims, when those prisoners had the right under state law to file a petition for rehearing from the last adverse state-court decision and failed to do so.

The presence or absence of exhaustion, in sum, tells us nothing about whether a prisoner has defaulted his constitutional claims. Exhaustion is purely a rule of timing and has played no role in the series of waiver decisions that foreclosed challenges to the composition of the grand jury, evidentiary rulings at trial, instructions to the jury, and finally, counsel's inadvertent error in failing to file a timely appeal from a state court's denial of collateral relief. The Court's reasons for progressively expanding its procedural default doctrine were best explained in the cases that arose in a trial setting. By failing to raise their constitutional objections at trial, defendants truly impinge state courts' ability to correct, or even to make a record regarding the effect of, legal errors. See *Engle*, 456 U. S., at 128; *Wainwright*, 433 U. S., at 90. Though I found that reasoning unsatisfactory in the state postconviction context, see *Coleman*, 501 U. S., at 758 (Blackmun, J., joined by Marshall and STEVENS, JJ., dissenting), at least the Court did not make the analytical error that pervades its opinion today. It did not assume that there was any necessary connection between the question of exhaustion and the question of procedural default.

### III

I come now to the real issue presented by this case: whether respondent's failure to include all six of his current claims in his petition for leave to appeal to the Illinois Supreme Court should result in his procedurally defaulting the three claims he did not raise.

The Court barely answers this question. Even though no one contends that respondent currently has any state remedy available to him, the Court concentrates instead on

exhaustion. It states that respondent has not exhausted his claims because he had "'the right . . . to raise' [his] claims through a petition for discretionary review in the [Illinois Supreme Court]." *Ante*, at 845 (quoting 28 U. S. C. § 2254(c)). The Court adds to this that "the creation of a discretionary review system does not, without more, make review in the Illinois Supreme Court unavailable." *Ante*, at 848. But, as the Court acknowledges almost immediately thereafter, the fact that "the time for filing [a petition to that court] has long passed" most assuredly makes such review unavailable in this case. *Ibid.* The Court then resolves this case's core issue in a single sentence and two citations: "Thus, Boerckel's failure to present three of his federal habeas claims to the Illinois Supreme Court in a timely fashion has resulted in a procedural default of those claims. *Coleman* v. *Thompson*, 501 U. S., at 731–732; *Engle* v. *Isaac*, 456 U. S. 107, 125–126, n. 28 (1982)." *Ibid.*

I disagree that respondent has procedurally defaulted these three claims, and neither *Engle* nor *Coleman* suggests otherwise. The question we must ask is whether respondent has given the State a fair opportunity to pass on these claims. This Court has explained that the best way to determine the answer to this question is to "respect . . . state procedural rules" and to inquire whether the State has denied (or would deny) relief to the prisoner based on his failure to abide by any such rule. *Coleman*, 501 U. S., at 751. See also *Engle*, 456 U. S., at 129 (federal courts should avoid "undercutting the State's ability to enforce its procedural rules"). Thus, we held in *Engle* that a prisoner defaults a claim by failing to follow a state rule requiring that it be raised at trial or on direct appeal. The Court in *Coleman* felt so strongly about "the important interests served by state procedural rules at every stage of the judicial process and the harm to the States that results when federal courts ignore these rules," 501 U. S., at 749, that it imposed procedural default on a death-row inmate for filing his appellate

brief in state postconviction review just three days after the State's deadline.

Surely the Illinois Supreme Court's discretionary review rule and respondent's attempt to follow it are entitled to at least as much respect. It is reasonable to assume that the Illinois Supreme Court, like this Court, has established a discretionary review system in order to reserve its resources for issues of broad significance. Claims of violations of well-established constitutional rules, important as they may be to individual litigants, do not ordinarily present such issues.

Discretionary review rules not only provide an effective tool for apportioning limited resources, but also foster more useful and effective advocacy. We have recognized on numerous occasions that the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail . . . is the hallmark of effective appellate advocacy.'" *Smith* v. *Murray*, 477 U. S. 527, 536 (1986) (quoting *Jones* v. *Barnes*, 463 U. S. 745, 751–752 (1983)). This maxim is even more germane regarding petitions for certiorari. The most helpful and persuasive petitions for certiorari to this Court usually present only one or two issues, and spend a considerable amount of time explaining why those questions of law have sweeping importance and have divided or confused other courts. Given the page limitations that we impose, a litigant cannot write such a petition if he decides, or is required, to raise every claim that might possibly warrant reversal in his particular case.

The Court of Appeals for the Seventh Circuit found that these same factors animate the Illinois Supreme Court's discretionary review rule. See 135 F. 3d 1194, 1200 (1998). It also pointed out that Illinois courts in state habeas proceedings dismiss claims like respondent's on res judicata— not waiver—grounds once they have been pressed at trial and on direct appeal; it makes no difference whether the prisoner has raised the claim in a petition for review to

the Illinois Supreme Court. *Id.*, at 1199 (citing *Gomez* v. *Acevedo*, 106 F. 3d 192, 195–196 (CA7 1997) (which cites in turn *People* v. *Coleman*, 168 Ill. 2d 509, 522–523, 660 N. E. 2d 919, 927 (1995))). The Illinois courts, in other words, are prepared to stand behind the merits of their decisions regarding constitutional criminal procedure once a trial court and an appellate court have passed on them. No state procedural ground independently supports such decisions, so federal courts do not undercut Illinois' procedural rules by reaching the merits of the constitutional claims resolved therein. See *Coleman*, 501 U. S., at 736–738.

We ordinarily defer to a federal court of appeals' interpretation of state-law questions. See *Bishop* v. *Wood*, 426 U. S. 341, 346–347 (1976). The Court today nevertheless refuses to conclude that the Illinois rule "discourages the filing of certain petitions" (or even certain claims in petitions), and surmises instead that the rule does nothing more than announce the State Supreme Court's desire to decide for itself which cases it will consider on the merits. *Ante*, at 846. This analysis strikes me as unsatisfactory. I would, consistent with the Seventh Circuit's view, read the Illinois rule as dissuading the filing of fact-intensive claims of error that fail to present any issue of broad significance. I would also deduce from the rule that Illinois prisoners need not present their claims in discretionary review petitions before raising them in federal court.

The Court's decision to the contrary is unwise. It will impose unnecessary burdens on habeas petitioners; it will delay the completion of litigation that is already more protracted than it should be; and, most ironically, it will undermine federalism by thwarting the interests of those state supreme courts that administer discretionary dockets. If, as the Court has repeatedly held, the purpose of our waiver doctrine is to cultivate comity by respecting state procedural rules, then I agree with the Court of Appeals that we should not create procedural obstacles when state prison-

ers follow those rules. In fact, I find these observations by the Court of Appeals far more persuasive than anything in today's opinion:

"Boerckel provided Illinois state courts with an opportunity to review the matter in his direct appeal. Federal courts do not snatch claims from state courts when they review claims not included in discretionary petitions to state supreme courts. Our refusal to bar Boerckel from habeas review is a recognition of the inequity of penalizing a petitioner for following the requirements a state imposes on its second tier of appellate review. Allowing petitioners to exercise the discretion provided them by the states in selecting claims to petition for leave to appeal does not offend comity.

"We also note that requiring petitioners to argue all of their claims to the state supreme court would turn federalism on its head. If a state has chosen a system that asks petitioners to be selective in deciding which claims to raise in a petition for leave to appeal to the state's highest court, we seriously question why this Court should require the petitioner to raise all claims to the state's highest court if he hopes to request habeas review. The exhaustion requirement of § 2254 does not require such a result.

"Moreover, contrary to O'Sullivan's suggestion, this decision will not 'obliterate any opportunity for a state's highest court to protect federally secured rights because it will leave state prisoners with little incentive to petition state supreme courts.' Respondent Br. at 19. It is difficult to imagine that this holding will induce attorneys and defendants in state government custody to withhold an appropriate claim in a petition for leave to appeal to the state's highest court, knowing that it cannot hurt and could only potentially help their cause. O'Sullivan's argument assumes a remarkably risk-prone

group of defendants and attorneys, especially given the fact that 'the success rate at trial and on appeal, while low, is greater than the success rate on habeas corpus.' *See* Judith Resnik, *Tiers,* 57 S. Cal. L. Rev. 837, 894 (1984). We do not believe that it accurately predicts the effect our holding will have on the incentives to petition the Illinois Supreme Court.

"Finally, we reiterate our concern that '[t]reating an omission from a petition for a discretionary hearing as a conclusive bar to federal review under § 2254 could create a trap for unrepresented prisoners, whose efforts to identify unsettled and important issues suitable for discretionary review would preclude review of errors under law already established.' *Hogan* [v. *McBride*], 74 F. 3d [144,] 147 [(CA7 1996)]." 135 F. 3d, at 1201–1202.

The Court of Appeals, in effect, held that federal courts should respect state procedural rules regardless of whether applying them impedes access to federal habeas review or signals the availability of such relief. The Court today, on the other hand, admits that its decision may "disserv[e] . . . comity" and may cause an "unwelcome" influx of filings in state supreme courts. *Ante,* at 847. It takes no issue with the Court of Appeals' finding that Illinois would not invoke an independent state procedural ground as an alternative basis for denying relief to prisoners in respondent's situation. The Court today nevertheless requires defendants in every criminal case in States like Illinois to present to the state supreme court every federal issue that the defendants think might possibly warrant some relief if brought in a future federal habeas petition.

Thankfully, the Court leaves open the possibility that state supreme courts with discretionary dockets may avoid a deluge of undesirable claims by making a plain statement—as Arizona and South Carolina have done, see *ibid.*—that they do not wish the opportunity to review such claims before they pass into the federal system. I agree with

JUSTICE SOUTER, *ante*, at 850 (concurring opinion), that a proper conception of comity obviously requires deference to such a policy. But we should accord such deference under the procedural default doctrine, not by allowing state courts to construe for themselves the federal-law exhaustion requirement in § 2254. No matter how plainly a state court has said that it does not want the opportunity to review certain claims, discretionary review was either "available" to a prisoner when he was in the state system or it was not. And when the prisoner arrives in federal court, either the time for seeking discretionary review has run or it has not. The key point is that federal courts should not find *procedural default* when a prisoner has relied on a state supreme court's explicit statement that criminal defendants need not present to it every claim that they might wish to assert as a ground for relief in federal habeas proceedings.

I see no compelling reason to require States that already have discretionary docket rules to take this additional step of expressly disavowing any desire to be presented with every such claim. In my view, it should be enough to avoid waiving a claim that a state prisoner in a State like Illinois raised that claim at trial and in his appeal as of right.

I respectfully dissent.

JUSTICE BREYER, with whom JUSTICE STEVENS and JUSTICE GINSBURG join, dissenting.

In my view, whether a state prisoner (who failed to seek discretionary review in a state supreme court) can seek federal habeas relief depends upon the State's own preference. If the State does not want the prisoner to seek discretionary state review (or if it does not care), why should that failure matter to federal habeas law? See, *e. g., Coleman* v. *Thompson,* 501 U. S. 722, 731–732, 751 (1991) (emphasizing comity interest in federal habeas). Illinois' procedural rules, like similar rules in other States, suggest that the State does not want prisoners to seek discretionary State Supreme Court

review except in unusual circumstances. See Ill. Sup. Ct. Rule 315(a) (1998); accord, *e. g.,* Colo. Rule App. 49 (1998) (discretionary review granted "only when there are special and important reasons therefor"); Idaho Rule App. 118(b) (1999) (similar); Tenn. Rule App. Proc. 11(a) (1998) (similar). And JUSTICE STEVENS has explained how the majority's view of the matter will force upon state supreme courts many petitions for review that fall outside the scope of their discretionary review and which those courts would likely prefer not to handle. *Ante,* at 858 (dissenting opinion).

The small number of cases actually reviewed by state courts with discretion over their dockets similarly suggests that States such as Illinois have no particular interest in requiring state prisoners to seek discretionary review in every case. In 1997, the latest year for which statistics are available, the Illinois Supreme Court granted review in only 33 of the 1,072 criminal petitions filed (3.1%). See memorandum from Carol R. Flango, National Center for State Courts, to Supreme Court Library (June 11, 1999) (available in Clerk of Court's case file). Nor is Illinois unique among state courts of last resort employing discretionary review. See *ibid.* (in 1997, Virginia's Supreme Court granted 30 of 1,160 criminal petitions for review (2.6%); California granted 39 of 3,265 (1.2%); Georgia granted 11 of 189 (5.8%); Ohio granted 16 of 595 (2.7%); Connecticut granted 24 of 113 (21.2%); Louisiana granted 127 of 1,410 (9.0%); Minnesota granted 38 of 222 (17.1%); North Carolina granted 23 of 237 (9.7%); Tennessee granted 41 of 549 (7.5%); Texas granted 111 of 1,677 (6.6%)). On the majority's view, these courts must now consider additional petitions for review of criminal cases, which petitions will contain many claims raised only to preserve a right to pursue those claims in federal habeas proceedings. The result will add to the burdens of already overburdened state courts and delay further a criminal process that is often criticized for too much delay. Cf. *Hohn* v. *United States,* 524 U. S. 236, 264 (1998) (SCALIA, J., dissenting) (complaining of

"interminable delays in the execution of state . . . criminal sentences"). I do not believe such a result "demonstrates respect for the state courts." *Rose* v. *Lundy*, 455 U. S. 509, 525 (1982) (Blackmun, J., concurring).

I nonetheless see cause for optimism. JUSTICE SOUTER's concurring opinion suggests that a federal habeas court should respect a State's desire that prisoners *not* file petitions for discretionary review, where the State has expressed the desire clearly. *Ante*, at 849–850. On that view, today's holding creates a kind of presumption that a habeas petitioner must raise a given claim in a petition for discretionary review in state court prior to raising that claim on federal habeas, but the State could rebut the presumption through state law clearly expressing a desire to the contrary. South Carolina has expressed that contrary preference. See *In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases*, 321 S. C. 563, 471 S. E. 2d 454 (1990). Other States may do the same.

Even were I to take the majority's approach, however, I would reverse the presumption. I would presume, on the basis of Illinois' own rules and related statistics, and in the absence of any clear legal expression to the contrary, that Illinois does not mind if a state prisoner does not ask its Supreme Court for discretionary review prior to seeking habeas relief in federal court. But the presumption to which JUSTICE SOUTER refers would still help. And I write to emphasize the fact that the majority has left the matter open.