**Thomas CRAVALHO, Petitioner**

v.

**State of MAINE, Respondent**

**No. CV–03–127–B–W.**

United States District Court,
D. Maine.

Jan. 22, 2004.

Thomas Cravalho, Warren, ME, Pro se.

Charles K. Leadbetter, Assistant Attorney General, Augusta, ME, for Maine, State of, Respondent.

### *ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS*

WOODCOCK, District Judge.

On July 24, 2003, Thomas Cravalho, the Petitioner, filed a motion pursuant to 28 U.S.C. § 2254 seeking federal relief from his convictions in the State of Maine. (Docket No. 1). For the reasons set forth below, this Court DENIES the § 2254 petition.

### I. Background.

This case illustrates how the simple can become the complex. The petitioner has been found guilty of seven crimes, four in 1991 and three in 2001. He served his prison terms on three of the 1991 crimes and is currently serving his prison term time on a combination of the last 1991

crime and all of his 2001 crimes. Assuming he receives credits for good time, Mr. Cravalho will be released from prison in 2005. This much at least is straightforward.

To begin, in 1991, a Penobscot County Grand Jury indicted Mr. Cravalho on four counts: Count I, Class A gross sexual assault; Count II, Class A gross sexual assault; Count III, Class C unlawful sexual contact; and Count IV, criminal threatening with a dangerous weapon. The Penobscot County Superior Court ("Superior Court") docketed the case as BANSC–CR–1991–987 ("CR–91–987"). In 1992, after a two day trial, a Penobscot County jury convicted Mr. Cravalho on all four counts. Later that year, Justice Smith of the Superior Court sentenced Mr. Cravalho to three years imprisonment on Count III, the unlawful sexual contact; three years imprisonment on Count IV, the criminal threatening; and twelve years imprisonment on Count II, the gross sexual assault. These sentences were to be served concurrently. Justice Smith also sentenced Mr. Cravalho to ten years imprisonment on Count I, the other gross sexual assault, but suspended the entire prison term and ordered a six-year period of probation to be served consecutive to the sentences in Counts II, III, and IV. In essence, the Superior Court ordered Mr. Cravalho to serve twelve years in prison and, upon discharge, spend six years on probation.

On August 14, 1992, the day of his sentencing, Mr. Cravalho filed his first, but by no means his last set of legal documents, challenging his convictions and sentences. First, he filed an Application for Leave to Appeal his sentence under 15 M.R.S.A. § 2151 and former Maine Rule of Criminal Procedure 40, an application a Sentence Review Panel of the Maine Supreme Judicial Court ("Law Court") must grant. On October 1, 1992, the Law Court denied the Application. Second, Mr. Cravalho filed a direct appeal of his conviction to the Law Court. In 1994, the Law Court affirmed the judgment by memorandum of decision.

Mr. Cravalho continued his legal challenges in 1994 by filing a Petition for Post–Conviction Review. After extensive legal maneuvering, the matter was ultimately scheduled for an evidentiary hearing before then-Justice Kravchuk on July 18, 1997. On July 30, 1997 after the hearing was held, Justice Kravchuk denied Mr. Cravalho's Petition for Post–Conviction Review, issuing written findings of fact and conclusions of law. Mr. Cravalho appealed her decision to the Law Court where, on October 6, 1997, Associate Justice Clifford, acting for the Law Court, denied a certificate of probable cause to proceed with the appeal.

In 1999, Mr. Cravalho was released from prison. His crimes on Counts II–IV of the conviction in CR–91–987 were discharged, but his sentence on Count I of CR–91–987 remained. Upon his release, Mr. Cravalho began serving his six-year term of probation.

On April 25, 2001, Mr. Cravalho's probation officer filed a Motion for Probation Revocation, alleging new criminal conduct. Specifically, the probation officer alleged two domestic assaults, a criminal threatening, and causing a police standoff. On June 4, 2001, a Penobscot County Grand Jury indicted Mr. Cravalho on three counts: Count I, assault; Count II, terrorizing;[1] and, Count III, assault. Under 17–A M.R.S.A. § 1252(4–A), Mr. Cravalho's previous Chapter 11 convictions enhanced the classification of each count one sentencing class. Thus, the assaults and

---

**1.** The probation revocation charge differed slightly from the indictment, since the probation revocation charged a violation of 17–A M.R.S.A. § 209(1) (criminal threatening), and the indictment charged a violation of 17–A M.R.S.A. § 210(1)(A) (stalking).

terrorizing were charged as Class C crimes, not Class D crimes. The grand jury could not indict Mr. Cravalho on creating a police standoff, as the charge is civil, not criminal, under 25 M.R.S.A. § 3801. The Superior Court docketed the case as BANSC–CR–2001–394 ("CR–01–394").

On July 2, 2001, Justice Mills of the Superior Court held an evidentiary hearing on the motion for revocation of probation. At the conclusion of the hearing, she found that the State had proven the assaults, but not the criminal threatening. On July 17, 2001, at the dispositional hearing for the revocation, Mr. Cravalho and his attorney, Bradford MacDonald, Esq., informed the court that in addition to the disposition on the probation revocation, Mr. Cravalho would plead guilty to all three pending criminal charges. After the Rule 11 hearing, the Superior Court sentenced Mr. Cravalho to five years imprisonment on each of the three counts, to be served concurrently with each other and with the prison sentence on Count I in CR–91–987. Justice Mills also partially revoked Mr. Cravalho's probation, modifying the ten-year suspended prison term so that seven years would be served and the three remaining years would be suspended. Justice Mills ordered the prison term on the probation revocation to be served concurrently with the sentences on the convictions in CR–01–394. The revocation of probation was a modification of Justice Smith's suspension of the execution of the 1991; it was not a new sentence.

In light of changes in the calculation of good time, the net effect of the July 17, 2001 hearing was that Mr. Cravalho was to be jailed under the remaining charge in CR–91–987 until October 28, 2005, and under the charge in CR–01–394 until December 24, 2005. Mr. Cravalho began serving these sentences on July 19, 2001.

After pleading guilty and being sentenced, Mr. Cravalho immediately initiated another series of legal actions challenging his conviction and imprisonment. On August 2, 2001, Attorney MacDonald filed an Application for Leave to Appeal to the Law Court for review of Mr. Cravalho's sentences in CR–01–394 and of the "modification" of the sentence in CR–91–987. On November 9, 2001, Justice Rudman, acting for the Law Court's Sentencing Review Panel, denied the Application for Leave to Appeal.

On January 21, 2002, Mr. Cravalho filed a motion under Maine Rule of Criminal Procedure 35 to reduce or correct the sentence ("Rule 35 Motion"). Mr. Cravalho argued that based on the same conduct, Justice Mills had determined the State had failed to prove the criminal threatening charge, but had accepted his guilty plea to terrorizing. As Justice Mills had failed to find it more probable than not he had committed the probation violation of criminal threatening, he contended she was barred from accepting a guilty plea to terrorizing, based on precisely the same conduct.

Justice Mills heard arguments on the Rule 35 Motion on July 2, 2001. Mr. Cravalho, represented at this time by Attorney MacDonald, argued double jeopardy and *res judicata*. Justice Mills explained to Mr. Cravalho that in the motion to revoke probation, the State had charged him with criminal threatening occurring on April 21, 2001. At the July 2, 2001 hearing, she had found the State had proven criminal threatening, but it had taken place on April 18, 2001, not April 21, 2001. On July 17, 2001, Mr. Cravalho had pled guilty to terrorizing based on the April 18, 2001, incident. Justice Mills concluded, "there's no inconsistency . . . with a plea to terrorizing regarding incidents that [were] alleged to have occurred on April 18 and

my finding that the State had not proved that you committed criminal threatening on April 21." Justice Mills denied the motion and Mr. Cravalho apologized to the court for taking its time, saying that he did not "understand the two different dates."

However, on July 11, 2002, Mr. Cravalho appealed the denial of the Rule 35 Motion to the Law Court. In his appeal, Mr. Cravalho, this time represented by Thomas Sheehan, Esq., argued the collateral estoppel issue raised before Justice Mills and in addition, raised the argument that he should have been informed of the applicability of 17–A M.R.S.A. § 201(1)(B) to the charge of Class C terrorizing at his Rule 11 hearing.[2] On October 29, 2002, Justice Rudman, acting again on behalf of the Law Court, denied Mr. Cravalho's request for a certificate of probable cause, required under Maine Rule of Appellate Procedure 19.

On October 1, 2002, Mr. Cravalho, acting *pro se,* filed a Motion for Post–Conviction Review of the sentence under 15 M.R.S.A. § 2121 ("Motion for Post–Petition Review"). On November 18, 2002, Justice Hunter of the Maine Superior Court dismissed the Motion for Post–Conviction Review as barred by the one-year statute of limitations under 15 M.R.S.A. § 2128–A(5–6).

On March 21, 2003, Mr. Cravalho filed a motion for enlargement of time to appeal Justice Hunter's dismissal of the Motion for Post–Conviction Review. Justice Hunter denied the motion for enlargement on March 28, 2003, and Mr. Cravalho failed to file a timely appeal of the denial. On May 20, 2003, Mr. Cravalho filed a notice of appeal to the Law Court and a second motion for enlargement. On June 5, 2003, Chief Justice Saufley, acting for the Law Court, dismissed Mr. Cravalho's appeal as being filed out of time.

On July 24, 2003, Mr. Cravalho ("Petitioner") filed his *pro se* § 2254 petition with this Court, raising a host of asserted legal errors. The Maine State Attorney General has responded with a fifty-five page brief.

## II. Discussion.

### A. Habeas Prerequisites.

This Court's preliminary analysis must turn to whether the § 2254 petition has satisfied the habeas prerequisites of timeliness and exhaustion of state remedies. Such an analysis indicates that although the petition is timely, a number of the Mr. Cravalho's arguments have not been exhausted at the state level.

### 1. Timeliness.

The § 2254 statute of limitation is set forth in 28 U.S.C. § 2244, which reads, in part:

> A 1–year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review....

28 U.S.C. § 2244(d)(1)(A). The one-year period may be tolled by operation of § 2244(d), which provides:

> The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any

---

**2.** Title 17–A, section 201(1)(B) applies to instances where the petitioner caused "evacuation of a building, place of assembly or facility of public transportation."

period of limitation under this subsection.

*Id.* § 2244(d)(2).

Here, on November 10, 2001, the day after Justice Rudman denied the Application for Leave to Appeal, the Petitioner's sentence became final and the one-year period began to run. Mr. Cravalho tolled the period on January 31, 2002, when he filed his Rule 35 Motion. The period began to run again on December 10, 2002, twenty-one days after Justice Hunter dismissed the Motion for Post–Conviction Review on November 18, 2002. 15 M.R.S.A. § 2131(1); Me. R. Cr.App. P. 2(b)(2)(A). At that time, approximately eighty-two days had run on the one-year period of limitations: the time between the denial of Mr. Cravalho's Application for Leave to Appeal on November 10, 2001, and the submission of his Rule 35 Motion on January 31, 2002. Therefore, his § 2254 petition, filed on July 24, 2003, came well within the one-year period and is timely.

## 2. Exhaustion of State Remedies.

 The exhaustion of Mr. Cravalho's state remedies is more complicated. Title 28, section 2254 provides in part:

(b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that—

(A) the applicant has exhausted the remedies available in the courts of the State ...

. . . . . . . . . . . . . . .

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the

State, within the meaning of this section, if he has the right under the law of the state to raise, by any available procedure, the question presented.

The exhaustion doctrine requires a prisoner to give state courts a full and fair opportunity to resolve federal constitutional claims before such claims are presented to the federal courts. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). To do so, a state prisoner must invoke one complete round of the state's established appellate review process. *Id.*

Mr. Cravalho raised a number of grounds in his Motion for Post–Conviction Review, including an argument that the State's July 2, 2001 failure to prove by a preponderance of the evidence the crime of criminal threatening precluded his July 17, 2001 plea of guilty to the crime of terrorizing; a claim of ineffective assistance on the part of Attorney MacDonald; an assertion of a due process violation; and, a patently frivolous allegation that Justice Mills erred by failing to inform him at the time of his July 17, 2001 plea of the provisions of 17–A M.R.S.A. § 210(1)(B).

 This Court does not need to reach the question of whether Justice Hunter was correct in his dismissal of the Motion for Post–Conviction Review on statute of limitations grounds, an issue of some complexity and uncertainty.[3] Mr. Cravalho himself failed to file a timely appeal of Justice Hunter's decision and the Law Court dismissed his later appeal due to its untimeliness. Under *O'Sullivan*, 526 U.S. at 845, 119 S.Ct. 1728, Mr. Cravalho has

---

**3.** Though Justice Hunter based his decision on statute of limitation grounds, Mr. Cravalho's Motion for Post–Conviction Review appears to have been timely. Justice Hunter did not explain the effect of the Rule 35 Motion on the one-year period under 15 M.R.S.A.

§ 2128(5), but it is far from clear that the Rule 35 Motion would *not* toll the period. *But see, e.g., Smith v. State*, 479 A.2d 1309 (Me.1984) (describing limited availability of motion for post-conviction review in pre–15 M.R.S.A. § 2128(5) regime).

failed to invoke one complete round of the State's established appellate review process. Accordingly, his § 2254 petition is unexhausted as to the claims set forth in his Motion for Post–Conviction Review.

■ Further, the Law Court's dismissal of the Mr. Cravalho's appeal represents the final state court judgment on the Motion for Post–Conviction Review. Since the Law Court reached its conclusion on independent and adequate state grounds—namely, a rule of Maine procedure—review of the decision by this Court is inappropriate, regardless of misgivings about the correctness of the Superior Court decision. *E.g., Coleman v. Thompson,* 501 U.S. 722, 729, 111 S.Ct. 2546, 115 L.Ed.2d 640 (holding that federal habeas courts do not review state court decisions that rest on adequate and independent state grounds, such as petitioner's failure to meet state procedural requirements); *Phoenix v. Matesanz,* 189 F.3d 20, 24 (1st Cir.1999) (stating same); *Haskell v. Maine,* 2003 WL 1900876, *1 (D.Me.) (Kravchuk, M.J.) ("The denial of a claim by a state post-conviction court for procedural reasons can bar federal review of the merits of the claim when the denial is based on adequate and independent state grounds").

■ Mr. Cravalho has presented a "mixed" petition, then, containing both exhausted and unexhausted claims. At one time, this Court would have been required to dismiss the petition and leave Mr. Cravalho to either exhaust his state claims or amend and resubmit the petition to present only the exhausted claims. *Rose v. Lundy,* 455 U.S. 509, 511, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). However, courts now have the discretion to review a petition on its merits, notwithstanding the petitioner's failure to exhaust his state law remedies. 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State"); *see Loving v. O'Keefe,* 960 F.Supp. 46 (S.D.N.Y.1997). Here, it is in the interest of judicial efficiency to consider the merits of the exhausted claims instead of requiring Mr. Cravalho to refile the petition listing only the exhausted claims.

**B. Petitioner's Remaining Claims.**

■ The only claims this Court can properly consider are those presented in the Rule 35 Motion. This Court must consider those issues in light of the procedural default doctrine. As explained in *O'Sullivan,* the purpose of this doctrine is "to ensure that state prisoners not only become ineligible for state relief before raising their claims in federal court, but also that they give state courts a sufficient opportunity to decide those claims before doing so." *O'Sullivan,* 526 U.S. at 853, 119 S.Ct. 1728. Thus, a habeas petitioner who has concededly exhausted his state remedies "must have *properly* done so by giving the State a fair 'opportunity to pass upon (his claims)'". *Id.* at 854, 119 S.Ct. 1728 quoting *Darr v. Burford,* 339 U.S. 200, 204, 70 S.Ct. 587, 94 L.Ed. 761 (1950). A petitioner "procedurally defaults" on a claim when he denies the state such an opportunity. *Darr v. Burford,* 339 U.S. 200, 204, 70 S.Ct. 587, 94 L.Ed. 761 (1950). The consequence of the default is the petitioner's ineligibility for relief on those grounds, save his showing of cause for federal review and prejudice from the alleged violation of federal law, or a fundamental miscarriage of justice resulting from the federal court's failure to review. *Edwards v. Carpenter,* 529 U.S. 446, 451, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000); *Murray v. Carrier,* 477 U.S. 478, 485–91, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986).

■ Therefore, this Court must compare the issues raised in the Rule 35 Mo-

tion and the issues raised in the § 2254 petition "to ascertain whether the State has had a fair opportunity to pass on the claims for which Mr. Cravalho now seeks federal relief." In his Rule 35 Motion, Mr. Cravalho focused on Justice Mills' July 2, 2001, finding that the State had not proven the charge of criminal threatening and Justice Mills' July 17, 2001, acceptance of his guilty plea to the charge of terrorizing. Mr. Cravalho protested that he had been "found innocent" by a preponderance of the evidence "of criminal threatening," a charge that he contended required a "lower standard of proof" than the crime of "terrorizing" to which he later pled guilty. In Mr. Cravalho's appeal to the Law Court of the Rule 35 Motion, Attorney Sheehan raised a number of issues. First, he complained that the Superior Court erred by enhancing the terrorizing charge from a Class D to a Class C. Second, although the prose in the memorandum is rather dense, the gist of the appeal was that the Superior Court was bound by its earlier determination that the State had failed to prove the April 21, 2001 criminal threatening and, therefore, this finding precluded a later finding that Mr. Cravalho was guilty of terrorizing on April 18, 2001. Finally, Attorney Sheehan raised a question of whether Justice Mills erred by failing to inquire about 17–A M.R.S.A. § 210(1)(B).

In his § 2254 petition, Mr. Cravalho has alleged: (1) conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily with understanding of the nature of the charge and the consequences of the plea; (2) conviction obtained by a violation of the privilege against self-incrimination; (3) conviction obtained by unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant; (4) conviction obtained by action of a grand and petit jury unconstitutionally selected and impaneled; (5) denial of effective assistance of counsel; and (6) denial of right of appeal. Mr. Cravalho also attached a fourteen-page typewritten explanation of his contentions. In the attachment, Mr. Cravalho repeated portions of the memorandum in support of the Rule 35 Motion appeal that Attorney Sheehan filed with the Law Court, arguing that Justice Mills failed to "inquire of the Defendant the element that the state would have to prove that Defendant's actions caused 'evacuation of a building, place of assembly or facility of public transport.'" He also charged that the Superior Court "knew that the State could not prove the element, which enhances the April 18, 2001 Terrorizing charge to a Class C" and failed to "inquire regarding the element, which enhances the Terrorizing charge to a class C." Mr. Cravalho then raised a collateral estoppel issue, asserting that the "facts of the incident that gave rise to the enhanced terrorizing charge were the same facts that were the basis of the Court's Ruling that the state had failed to prove that the criminal threatening happened on April 18, 2001."

Even considering the leeway afforded *pro se* litigants, Mr. Cravalho did not present the State courts with a full and fair opportunity to resolve the issues enumerated in the six listed grounds of his § 2254 petition. *O'Sullivan*, 526 U.S. at 855, 119 S.Ct. 1728. On those claims, the petitioner has shown neither cause for review nor prejudice from any alleged violation of federal law. *Edwards*, 529 U.S. at 451, 120 S.Ct. 1587; *Murray*, 477 U.S. at 485–91, 106 S.Ct. 2639. The petitioner has also failed to demonstrate that this Court's failure to review such claims will result in a fundamental miscarriage of justice. *Id.* Therefore, this Court will not review those issues.

■ However, this Court will address Mr. Cravalho's remaining claims, for which he has exhausted his State remedies.

First, Mr. Cravalho has raised two arguments regarding the enhancement of his sentence: that Justice Mills committed legal error by failing to inquire about whether his actions caused an "evacuation of a building, place of assembly or facility of public transport" and that the Superior Court failed to inquire as to the elements that "would have caused the enhancement." The merits of Mr. Cravalho's arguments notwithstanding, this Court is barred from reviewing the claim because the Superior Court enhanced Mr. Cravalho's sentence under adequate and independent state grounds; namely, 17–A M.R.S.A. § 1252(4–A)'s provision for enhancement based on two prior convictions of Chapter 11 crimes. *E.g., Coleman,* 501 U.S. at 729, 111 S.Ct. 2546; *Matesanz,* 189 F.3d at 24; *Haskell,* 2003 WL 1900876, *1.[4]

■ Second, in his collateral estoppel argument, Mr. Cravalho contends that since the facts underlying the enhanced terrorizing charge mirrored the facts underlying the criminal threatening charge at the probation revocation hearing, the State is estopped from asserting that a criminal violation occurred. Mr. Cravalho is wrong, both in law and in fact. On July 2, 2002, Justice Mills plainly explained to Mr. Cravalho that there were two different dates involved and Mr. Cravalho, recognizing his error, apologized to the Superior Court for taking its time. Mr. Cravalho's renewed faith in this argument, and the apparent passing of his remorse for taking courts' time, does not change the fact that there were two different dates involved and the argument is without merit. Further, even if the dates and conduct were the same, Mr. Cravalho would have no cognizable claim as a matter of law. *State v. Reed,* 686 A.2d 1067 (Me.1996) (stating denial of probation revocation is not final judgment on defendant's guilt or innocence on same conduct and collateral estoppel does not apply).

### III. Conclusion.

For the foregoing reasons, the Mr. Cravalho's request for relief under § 2254 must be DENIED. The claims are either barred because he failed to exhaust state remedies or barred because they are factually and legally unsupported.

SO ORDERED.

---

4. The arguments also betray Mr. Cravalho's faulty recollection of the proceedings. The July 17, 2001, sentencing transcript reveals that Justice Mills clearly explained to Mr. Cravalho that the State would have had to prove that he had been convicted of gross sexual assault twice in 1992. ("The State alleges again and would have to prove the two prior gross sexual assault convictions.") The prosecutor, Assistant District Attorney Alice Clifford, also specified the two prior convictions in her recitation of the evidence the State would have produced had the matter gone to trial. ("State would also produce into evidence through court records his criminal convictions, specifically of Count I, gross sexual assault, in Docket No. 91–987 and Count 2, gross sexual assault, in Docket No. 91–987...").