Rodney BRIGHT, Petitioner,

v.

Robert SNYDER, Warden, Wesley E. Perkins, Director, and Attorney General of the State of Delaware, Respondents.

No. CIV.A.00–900–SLR.

United States District Court, D. Delaware.

Aug. 12, 2002.

Joseph M. Bernstein, Wilmington, Delaware, Counsel for Petitioner.

Thomas E. Brown, Delaware Department of Justice, Wilmington, Delaware, Counsel for Respondents.

## MEMORANDUM OPINION

SUE L. ROBINSON, Chief Judge.

### I. INTRODUCTION

Petitioner Rodney Bright is a Delaware inmate in custody at the Delaware Correctional Center in Smyrna, Delaware. Currently before the court is petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons that follow, the court concludes that petitioner's claims do not provide a basis for granting federal habeas relief. Accordingly, the court will deny his petition.

### II. BACKGROUND

Between 1990 and 1994, petitioner received medical and psychiatric treatment as an outpatient at the Veterans Administration Medical Center in Indianapolis. Dr. Aimee Mayeda, a psychiatrist, supervised petitioner's treatment team.

During this period of time, petitioner's former wife, Ona Bright, lived in Delaware with their three children. In the spring of 1994, petitioner began expressing thoughts of killing Ona to members of his treatment team. Petitioner was allowed to visit his children in June 1994, when his oldest son graduated from high school. During the visit, petitioner criticized Ona's child-rearing and threatened to kill her when their youngest child turned eighteen.

After returning to Indianapolis, petitioner expressed his anger toward Ona and his thoughts of killing her to Dr. Mayeda. According to Dr. Mayeda, these thoughts intensified throughout the following months. He telephoned Ona frequently in the fall of 1994, and accused her of being a bad mother. He asked if he could visit at Christmas, but Ona denied his request.

On December 3, 1994, petitioner was admitted to the hospital in Indianapolis, but was granted an early discharge on December 7. When Dr. Mayeda learned of petitioner's early discharge, she telephoned him to schedule an appointment for the next day. Petitioner called to cancel his December 8 appointment, and told Dr. Mayeda that he was leaving for Delaware to kill Ona. Dr. Mayeda convinced petitioner to schedule another appointment for the next day. She obtained Ona's telephone number and called to tell her of petitioner's plans. Dr. Mayeda also contacted the police in New Castle County, Delaware.

The next day, petitioner called Dr. Mayeda to cancel his appointment, and told her that he was leaving immediately to kill Ona. Dr. Mayeda informed him that she had contacted Ona and the police. Petitioner responded that he had guns and ammunition, that the police could not stop him, and that he had an "ex-con" friend in Philadelphia who would assist him. Dr. Mayeda then reported petitioner's threats to Ona and the police in both New Castle County and Indianapolis. Based on Dr. Mayeda's call, the New Castle County police began protecting Ona and her children.

Meanwhile, on December 10, petitioner was arrested at a motel about sixty miles east of Indianapolis. Police seized a loaded handgun, some ammunition, and a knife. After a short detention at a county jail, petitioner was released and continued traveling east. For the next several days, he left threatening messages on Ona's answering machine. He arrived in Delaware on December 14, 1994, and checked into two different motels.

On December 16, a deputy sheriff in Cecil County, Maryland, responded to a call reporting a suspicious vehicle. Petitioner was near the vehicle, claimed to be lost, and gave the officer Ona's address and telephone number. Upon investigation, the deputy learned of outstanding warrants for petitioner's arrest. Petitioner told one of the officers that he should have killed his wife when he had the chance. Delaware authorities later searched petitioner's car and found a hunting knife purchased from a local hardware store, clothing, maps, and a key to a room at one of the motels. At the motel room, police discovered a roll of clothesline, a roll of duct tape, a holster for the hunting knife, and a sharpening stone purchased from a local hardware store.

Based on these events, a grand jury in the Delaware Superior Court charged petitioner with one count of attempted murder and five counts of terroristic threatening. At trial, Dr. Mayeda testified respecting petitioner's threats to kill Ona. Dr. Mayeda also testified respecting petitioner's psychiatric diagnoses and typical behaviors exhibited by persons with such disorders. The Superior Court overruled defense counsel's objection to Dr. Mayeda's testimony as privileged under the psychiatrist-patient privilege of Rule 503 of the Delaware Rules of Evidence. The jury found petitioner guilty of attempted murder and four counts of terroristic threatening, and not guilty of one count of terroristic threatening. The Superior Court denied petitioner's motion for arrest of judgment and for a new trial, and ordered a psychiatric evaluation prior to sentencing. On September 11, 1998, the Superior Court sentenced petitioner to life in prison without parole for attempted murder, plus four years for making terroristic threats. The Delaware Supreme Court affirmed petitioner's conviction and sentence. *Bright v. State*, 740 A.2d 927 (Del.1999).

Petitioner then filed in the Superior Court a motion for postconviction relief pursuant to Rule 61 of the Superior Court Rules of Criminal Procedure. In his mo-

tion, petitioner alleged that trial counsel rendered ineffective assistance by failing to object to Dr. Mayeda's testimony as inadmissible character evidence. He also alleged that the Delaware Supreme Court violated his constitutional right to due process by ruling that Dr. Mayeda's "character" testimony was admissible. The Superior Court determined that petitioner's claim of ineffective assistance of trial counsel was without merit, and that his due process claim was procedurally barred. *State v. Bright,* No. 9412012391R1, 1999 WL 1568401 (Del.Super.Ct. Oct.19, 1999). The Delaware Supreme Court affirmed the denial of postconviction relief. *Bright v. State,* No. 495, 1999, 2000 WL 990901 (Del. 2000).

Petitioner has now filed the current application for federal habeas relief.

## III. GOVERNING LEGAL PRINCIPLES

### A. Exhaustion of State Court Remedies

Pursuant to the federal habeas statute:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—

(A) the applicant has exhausted the remedies available in the courts of the State; or

(B)(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1). Grounded on principles of comity, the requirement of exhaustion of state court remedies ensures that state courts have the initial opportunity to review federal constitutional challenges to state convictions and sentences. *Werts v. Vaughn,* 228 F.3d 178, 192 (3d

Cir.2000), *cert. denied,* 532 U.S. 980, 121 S.Ct. 1621, 149 L.Ed.2d 483 (2001).

To satisfy the exhaustion requirement, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). Although a state prisoner need not "invoke extraordinary remedies," he must fairly present each of his claims to the state courts. *Id.* at 844–45, 119 S.Ct. 1728.

If a claim has not been fairly presented, but further review in the state courts is procedurally barred, the exhaustion requirement is deemed satisfied because further state court review is unavailable. *Lines v. Larkins,* 208 F.3d 153, 160 (3d Cir.2000), *cert. denied,* 531 U.S. 1082, 121 S.Ct. 785, 148 L.Ed.2d 681 (2001). Although deemed exhausted, such claims are nonetheless procedurally defaulted. *Lines,* 208 F.3d at 160. In addition, where a state court refuses to consider a petitioner's claims because he failed to comply with an independent and adequate state procedural rule, his claims are deemed exhausted but procedurally defaulted. *Harris v. Reed,* 489 U.S. 255, 263, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989); *Werts,* 228 F.3d at 192. Federal habeas review of procedurally defaulted claims is barred unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or a fundamental miscarriage of justice. *Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Lines,* 208 F.3d at 160.

### B. Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 mandates the following standards of review:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States
>
> . . .

28 U.S.C. § 2254(d). A federal court may issue a writ of habeas corpus under this provision only if it finds that the state court decision on the merits of a claim either: (1) was contrary to clearly established federal law, or (2) involved an unreasonable application of clearly established federal law. *Williams v. Taylor,* 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

## IV. DISCUSSION

Petitioner articulates the following claims for federal habeas corpus relief:

(A) He was deprived of his right to a fair trial under the Due Process Clause of the Fourteenth Amendment when the state was permitted to introduce evidence concerning his character for the purpose of proving his propensity to commit the crimes charged. (D.I. 13 at 4)

(B) The decision of the Delaware Supreme Court on direct appeal was an untenable application of state law in violation of the Due Process Clause of the Fourteenth Amendment. (*Id.* at 19)

(C) Trial counsel rendered ineffective assistance by failing to object to the admission of character evidence. (*Id.* at 22)

The court addresses each of petitioner's claims in turn.

### A. Constitutional Right to Due Process: Admission of Dr. Mayeda's "Character" Testimony

Petitioner's first claim is that Dr. Mayeda's testimony respecting his character was admitted in violation of his constitutional right to due process. The challenged "character" evidence includes the following statements:

(1) Petitioner was being treated for bipolar disorder, and was taking antidepressants and antipsychotic drugs;

(2) Petitioner had stated that he did not feel guilty about his thoughts of killing Ona, and it was something he should be allowed to do;

(3) Dr. Mayeda had arranged for security to be present in anticipation of her appointment with petitioner on December 9, 1994;

(4) Dr. Mayeda had obtained or planned to obtain a form called an "emergency detention form" to be used when a doctor believes a person is "dangerous and mentally ill";

(5) Petitioner knew right from wrong and believed that he has "extremely high intelligence," but felt that he was "above the law" and did not need to follow the rules;

(6) Petitioner was diagnosed with alcohol abuse, panic disorder, a chemical disorder of the brain, and a mixed personality disorder with antisocial and narcissistic features; and

(7) A person with these disorders is likely to use force to take something from somebody and violate the rights of others.

(D.I. 13 at 4–5)

According to respondents, petitioner presented this claim on direct appeal as a state evidentiary claim only, not as a federal due process claim. While they acknowledge that he presented a federal due

process claim in postconviction proceedings, respondents argue that the Delaware Supreme Court found his federal due process claim procedurally defaulted because he failed to raise it on direct appeal. Respondents thus ask the court to find that petitioner's federal due process claim is procedurally barred from federal habeas review. Petitioner counters that he fairly presented his federal due process claim on direct appeal, and asks the court to grant relief on the merits.

■ The first question the court must consider is whether petitioner fairly presented a federal due process claim on direct appeal based on the admission of Dr. Mayeda's "character" testimony. According to the United States Supreme Court, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court." *Duncan v. Henry,* 513 U.S. 364, 366, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995). Presenting a similar claim based on a violation of state evidentiary rules does not constitute fair presentation of a federal due process claim. *Id.*

■ To fairly present a federal claim for purposes of exhaustion, a petitioner must present its factual and legal substance to the state courts "in a manner that puts them on notice that a federal claim is being asserted." *McCandless v. Vaughn,* 172 F.3d 255, 261 (3d Cir.1999). A petitioner may assert a federal claim without explicitly referencing a specific constitutional provision by: (1) relying on pertinent federal cases employing constitutional analysis; (2) relying on state cases employing constitutional analysis in like fact situations; (3) asserting a claim in terms so particular as to call to mind a specific right protected by the Constitution; or (4) alleging a pattern of facts that

is well within the mainstream of constitutional litigation. *Id.*

In an effort to discern whether petitioner fairly presented a federal due process claim on direct appeal, the court has reviewed carefully his brief submitted to the Delaware Supreme Court. (D.I. 11, No. 436, 1998, Appellant's Opening Br.) In his brief, petitioner repeatedly asserts that the admission of Dr. Mayeda's testimony violated Rule 404 of the Delaware Rules of Evidence. (*Id.* at 11–12, 18–22) He also asserts that he was "deprived of his right to a fair trial" by the admission of Dr. Mayeda's testimony. (*Id.* at 11, 22) Nowhere in petitioner's brief does he argue specifically that the admission of Dr. Mayeda's testimony violated his constitutional right to due process.

Notwithstanding, petitioner argues that he put the Delaware Supreme Court on notice that he was raising a federal due process claim by citing *Holtzman v. State,* No. 221, 1997, 1998 WL 666722 (Del. July 27, 1998). In *Holtzman,* the defendant challenged his conviction for engaging in unlawful sexual intercourse with his fourteen-year-old daughter. His challenges included several violations of his constitutional right to due process, as well as violations of state evidentiary rules. He argued specifically that the admission of character evidence violated Rule 404 of the Delaware Rules of Evidence. *Id.* at *6. The Delaware Supreme Court agreed and concluded that the admission of certain character evidence was "inadmissible and unfairly prejudicial." *Id.* at *7. In reaching this conclusion, the court relied solely on Rule 404 and state cases interpreting Rule 404—the court did not mention the Due Process Clause of the Fourteenth Amendment or any cases interpreting it. After considering each of the defendant's challenges separately, the Delaware Supreme Court reversed the defendant's con-

viction because the **"combination of errors** at Holtzman's trial denied his right to a fair trial by an impartial jury that is guaranteed to all defendants in a criminal proceeding by the Constitution of the United States and the Delaware Constitution." *Id.* at *9 (emphasis added).

An examination of *Holtzman* leads the court to conclude that petitioner did not fairly present his federal due process claim on direct appeal by citing *Holtzman*. *Holtzman's* discussion of the admission of character evidence was confined solely to state law. While the *Holtzman* court examined several federal due process issues, none of these involved the admission of character evidence. *Holtzman* concluded that the defendant was deprived of his constitutional right to a fair trial based on a "combination of errors," not on a finding that the admission of character evidence violated his constitutional right to due process. In short, petitioner's reliance on *Holtzman* did not put the Delaware Supreme Court on notice that he was challenging the admission of Dr. Mayeda's testimony on constitutional due process grounds.

■ Alternatively, petitioner maintains that he fairly presented his federal due process claim on direct appeal by arguing that the admission of Dr. Mayeda's testimony constituted plain error under Rule 404. Petitioner's trial attorney failed to object to Dr. Mayeda's testimony as inadmissible character evidence under Rule 404. Because no contemporaneous objection was made, the Delaware Supreme Court reviewed petitioner's Rule 404 challenge for plain error. *Bright,* 740 A.2d at 931. According to petitioner, the Delaware Supreme Court's plain error standard is equivalent to the standard for finding a federal due process violation. His allegation of plain error, he concludes, necessarily presented a federal due process challenge.

The court is not persuaded by this argument. A review of petitioner's brief on direct appeal demonstrates that his recitation of the plain error standard was solely for the purpose of setting forth the applicable standard for reviewing his Rule 404 challenge. (D.I. 11, Appellant's Opening Br. at 11–12, 20–21) Even if Delaware's standard for finding plain error is equivalent to the standard for finding a federal due process violation, the court cannot conclude that petitioner raised a federal due process challenge on this basis. To embrace petitioner's theory would essentially transform each state law assertion of plain error into a federal due process claim, thereby relieving petitioners of their duty to fairly present a federal due process claim to the state courts. Such a result is antithetical to the teachings of both the United States Supreme Court and the Third Circuit. *See Duncan,* 513 U.S. at 366, 115 S.Ct. 887 (stating that "mere similarity of claims is insufficient to exhaust."); *McCandless,* 172 F.3d at 261 (same).

Because petitioner did not fairly present this federal due process claim on direct appeal, the court must next consider whether it is now procedurally defaulted. According to respondents, petitioner raised his federal due process claim in his postconviction proceedings, but the Delaware Supreme Court ruled that it was procedurally defaulted because he failed to present it on direct appeal.

Petitioner argues, however, that the due process claim he presented in postconviction proceedings was not the same as the one he now raises. According to petitioner, he asserted in his postconviction proceedings that the Delaware Supreme Court violated his constitutional right to due process on direct appeal by ignoring Rule 404(a) and the state court's opinions interpreting the rule. He maintains that on postconviction appeal, the Delaware Su-

preme Court misunderstood this due process claim, and thus wrongly concluded that it was procedurally defaulted.

The court has reviewed carefully petitioner's brief submitted to the Delaware Supreme Court on postconviction appeal. (D.I. 11, No. 495, 1999, Appellant's Opening Br.) The court is uncertain as to the specific claim petitioner intended to present on postconviction appeal. The first argument section bears a heading alleging that the Delaware Supreme Court's decision on direct appeal amounted to a denial of his right to a fair trial under the Due Process Clause. (*Id.* at 4) Yet the argument set forth under this heading is devoted entirely to discussing how the admission of character evidence itself violated petitioner's constitutional right to due process, not how the Delaware Supreme Court ignored its own rules and opinions in derogation of his right to due process. Understandably, the Delaware Supreme Court interpreted petitioner's claim as alleging a due process violation based on the admission of character evidence. Because petitioner did not raise any such claim on direct appeal, the Delaware Supreme Court found it procedurally defaulted and refused to consider its merits on postconviction appeal.

■ While the court may be uncertain as to the claim petitioner intended to raise on postconviction appeal, the court is certain that his current federal due process claim is procedurally barred because he failed to present it on direct appeal. If petitioner had presented his current due process claim on postconviction appeal, the Delaware Supreme Court surely would have found it procedurally barred under Rule 61(i)(3):

> Procedural Default. Any ground for relief that was not asserted in the proceedings leading to the judgment of conviction, as required by the rules of this court, is thereafter barred, unless the movant shows
>
> (A) Cause for relief from the procedural default and
>
> (B) Prejudice from violation of the movant's rights.

Super. Ct. R.Crim. P. 61(i)(3). In Delaware, the failure to raise an issue on direct appeal renders a claim procedurally defaulted absent a showing of cause and prejudice. *See Bialach v. State,* 773 A.2d 383, 386 (Del.2001). As explained above, petitioner did not raise his current federal due process claim on direct appeal. He offers absolutely no explanation for his failure to do so. The court thus concludes that petitioner's current due process claim is procedurally defaulted under Rule 61(i)(3).

The only remaining question as to this claim is whether petitioner has articulated any reason why his procedural default should be excused. Petitioner acknowledges that the court can review the merits of a procedurally defaulted claim only if he shows cause and prejudice or a miscarriage of justice. (D.I. 13 at 9) Because he believes that he exhausted this claim, he opts not to "delve into the 'cause/prejudice' issue." (D.I. 18 at 2 n. 1) Nor does he make any assertions of his actual innocence for the purpose of establishing a miscarriage of justice.

In sum, the court finds that petitioner procedurally defaulted his federal due process claim based on the admission of character evidence by failing to fairly present it to the Delaware Supreme Court on direct appeal. The court can find no reason to excuse this procedural default. Therefore, the court concludes that this claim is procedurally barred from federal habeas review.

## B. Constitutional Right to Due Process: Delaware Supreme Court's Decision on Direct Appeal

■ Petitioner next challenges the Delaware Supreme Court's decision on direct appeal respecting the admissibility of Dr. Mayeda's testimony as character evidence. He alleges that the Delaware Supreme Court's decision "was so contrary to the plain language of D.R.E. 404 itself as well as prior case law, that the ruling itself amounts to a Denial of Due Process." (D.I. 13 at 19–20) Petitioner asserts that he exhausted this claim by presenting it in his postconviction proceedings, but that the state courts misunderstood it and wrongly found it procedurally barred. Respondents counter that this claim is merely a recharacterization of his procedurally defaulted federal due process claim, and argue that he has recharacterized it in an attempt to circumvent the procedural default.

The court agrees with respondents and will not allow petitioner to recast his claim in such a manner to avoid a procedural default. Because petitioner did not argue on direct appeal that the admission of Dr. Mayeda's testimony violated his constitutional right to due process, any such claim is now procedurally barred. To argue that the Delaware Supreme Court violated his constitutional right to due process by upholding the admission of Dr. Mayeda's testimony on state law grounds appears to be an attempt to sidestep the procedural bar.

The court can find no opinion from any federal court in which a habeas petitioner was permitted to recast his federal due process claim in such a manner for the purpose of avoiding a procedural default. At bottom, petitioner's claim is that the admission of Dr. Mayeda's testimony violated his constitutional right to due process, and this claim is procedurally barred for the reasons described above.

Even if petitioner's recharacterization of his claim were proper, neither of the cases on which he relies offers him the relief he seeks. In *Buehl v. Vaughn,* 166 F.3d 163 (3d Cir.1999), the Third Circuit assumed "for the sake of argument that a federal habeas court may reject a state court's 'plainly untenable' interpretation of state law." *Id.* at 175. Similarly, in *Taylor v. Kincheloe,* 920 F.2d 599 (9th Cir.1990), the Ninth Circuit opined that "deference to a state court's interpretation of its own laws 'is suspended only upon a finding that the court's interpretation is untenable.'" *Id.* at 609.

Here, petitioner does not challenge as "plainly untenable" any **interpretation** of state law. Rather, by his own words, he alleges that the Delaware Supreme Court's decision "amounted to an 'untenable' **application** of state law in violation of the Due Process Clause." (D.I. 13 at 20)(emphasis added) *Buehl* and *Taylor* are thus inapposite and offer petitioner no relief. He cites no other decision from any federal court granting habeas relief based on the misapplication of state evidentiary rules by the state's highest court.[1]

---

1. Under the federal habeas statute, a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Thus, claims based on errors of state law are not cognizable on federal habeas review. *Pulley v. Harris,* 465 U.S. 37, 41, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984); *Riley v. Taylor,* 277 F.3d 261, 310 n. 8 (3d Cir.2001). The court reads petitioner's current claim not as one arising purely under state law; his claim appears to be that the Delaware Supreme Court's error of state law was so egregious, *i.e.,* "plainly untenable," that it rose to the level of a federal due process violation. This court does not decide whether such a claim is cognizable on federal habeas review. *See Beazley v. Johnson,* 242 F.3d 248, 261 (5th Cir.)(stating that "the proper interpretation of state law is not cognizable in federal habeas proceedings"), *cert. denied,* —— U.S. ——, 122 S.Ct. 329, 151 L.Ed.2d 243 (2001). Rather, the court de-

For these reasons, the court concludes that petitioner's due process claim, based on the Delaware Supreme Court's decision on direct appeal, does not provide a basis for federal habeas relief.

### C. Ineffective Assistance of Counsel

■ Petitioner's final claim is that trial counsel rendered ineffective assistance in violation of the Sixth Amendment by failing to object to Dr. Mayeda's testimony as inadmissible character evidence under Rule 404. Respondents acknowledge, and correctly so, that petitioner exhausted this claim by fairly presenting it to the state courts in his postconviction proceedings.

In assessing a claim of ineffective assistance of counsel, the proper inquiry is the familiar two-part test of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): A defendant claiming ineffective assistance of counsel must show that (1) counsel's performance was deficient, and (2) counsel's deficient performance prejudiced the defense. *Id.* at 687, 104 S.Ct. 2052. In order to demonstrate prejudice, petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052. Moreover, because the state courts rejected petitioner's claim on the merits,[2] this court's review is confined to determining whether the state courts' decision was either contrary to, or involved an unreasonable application of, the *Strickland* test. *See* 28 U.S.C. § 2254(d)(1); *Williams*, 529 U.S. at 390, 120 S.Ct. 1495 (stating that *Strickland* is the "clearly established Federal law"

governing ineffective assistance of counsel claims).

The court finds that petitioner has fallen short of satisfying these standards. Petitioner himself acknowledges that the Delaware Supreme Court found "that the questioned evidence was **admissible** character evidence." (D.I. 13 at 26 n. 16) (emphasis in original). Likewise, the Superior Court "unequivocally reject[ed]" petitioner's argument that Dr. Mayeda's testimony would have been ruled inadmissible if counsel had objected. *Bright*, 1999 WL 1568401 at *1. Surely an attorney cannot render ineffective assistance by failing to object to admissible evidence. *See Hough v. Anderson*, 272 F.3d 878, 898 (7th Cir. 2001); *Anderson v. Goeke*, 44 F.3d 675, 680 (8th Cir.1995).

In short, the state courts ruled that Dr. Mayeda's testimony was admissible under state law, and that trial counsel was not ineffective for failing to object. The court concludes that the state courts' decision was neither contrary to, nor did it involve an unreasonable application of, the *Strickland* standard. For this reason, the court will deny petitioner's request for habeas relief as to this claim.

### V. CERTIFICATE OF APPEALABILITY

Finally, the court must determine whether a certificate of appealability should issue. *See* Third Circuit Local Appellate Rule 22.2. The court may issue a certificate of appealability only if petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C.

---

cides only that petitioner's current claim does not provide a basis for granting federal habeas relief.

**2.** Petitioner believes that the Delaware Supreme Court found his ineffective assistance claim procedurally barred for failure to raise it on direct appeal. (D.I. 13 at 22) Although

the court concedes that the Delaware Supreme Court's order is ambiguous, the court reads the order as agreeing with the Superior Court that petitioner failed to demonstrate prejudice as required by *Strickland*. For this reason, the court finds that the state courts rejected petitioner's ineffective assistance of counsel claim on the merits.

§ 2253(c)(2). This requires the petitioner to "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000).

As explained above, the court has concluded that the claims presented in the current petition do not provide a basis for granting federal habeas relief. The court is persuaded that reasonable jurists would not debate the correctness of its assessments. Petitioner, therefore, has failed to make a substantial showing of the denial of a constitutional right, and a certificate of appealability is not warranted.

## VI. CONCLUSION

For the reasons stated, the court will deny petitioner's application for a writ of habeas corpus, and will not issue a certificate of appealability. An appropriate order shall issue.