**Ronald N. JOHNSON, Petitioner,**

v.

**Thomas CARROLL, Warden,
Respondent.**

**No. CIV.A.02–562–JJF.**

United States District Court,
D. Delaware.

March 14, 2003.

---

Joseph M. Bernstein, Wilmington, DE, for Petitioner.

Thomas E. Brown, State of Delaware Department of Justice, Wilmington, DE, for Respondent.

## *MEMORANDUM OPINION*

FARNAN, District Judge.

Presently before the Court is a Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (D.I.1) filed by Petitioner Ronald N. Johnson. For the reasons set forth below, Petitioner's Section 2254 Petition will be granted to the extent that he challenges the trial judge's failure to recuse himself. The Court will grant the Writ of Habeas Corpus sought by Petitioner, unless he is given a new sentencing.

## BACKGROUND

Petitioner was indicted in the Delaware Superior Court on charges of theft of property valued in excess of $1,000, possession of a firearm during the commission of a felony, possession of a deadly weapon by a person prohibited, possession of drugs, first degree kidnaping and aggravated menacing in connection with the October 6, 1997 kidnaping of his estranged sixteen year old daughter, Karen Vincent. (A8–11).[1] The State entered a *nolle prosequi* as to the drug charges, and Petitioner was tried before a jury on the remaining charges against him.

At trial, the State presented evidence that Vincent's half-sister telephoned Crime Stoppers to provide them with a tip regarding Petitioner. (A64–65). On October 6, 1997, Vincent and her 21 month-old daughter were driving to meet Vincent's grandfather when she saw her father standing in front of the house where he was living. Vincent stopped to greet Petitioner, and Petitioner invited her inside. Once inside, Petitioner became "edgy" and questioned Vincent about who had tipped Crime Stoppers. Vincent refused to answer, and Petitioner went into the bedroom and returned to the living room with a shotgun. (A67–68). Vincent testified at trial that she was frightened, because the gun was pointing toward her. *Johnson v. State*, No. 525, 1999, Order at ¶ 3 (Del. Apr. 22, 2002). Petitioner then became angry, and Vincent revealed that her half-sister had made the phone call. (A68). According to Vincent, Petitioner then forced her to go to New York with him to visit Elliot Sanchez. Petitioner stopped at Vincent's house before proceeding to New York to get diapers for Vincent's daughter. Vincent testified that Petitioner took money from a box kept in her daughter's room. Vincent testified that sometime during the next day, Petitioner exited the car but left the keys in the ignition, so she seized the opportunity to drive back to Delaware. *Johnson*, No. 525, 1999 at ¶ 3.

Two other witnesses at trial testified regarding Petitioner's possession of the shotgun. The witnesses were Robert "Lucky" Kohland and his girlfriend, Dawn Rash, both of whom were acquaintances of Petitioner. Both witnesses testified that Petitioner borrowed the gun from Kohland some time before October 7, which was Kohland's birthday. Although the witnesses could not remember the specific date, they were certain it was prior to October 7, because that was Kohland's birthday and he had received a gun cabinet as a present and knew that Petitioner bor-

---

1. The Court's reference to "A" refers to Appellant's Appendix in *Johnson v. State*, No. 525, 2002 WL 714520 (Del. Apr. 22, 2002).

rowed the gun before he received the cabinet. (A48–54; A56–62).

Petitioner did not testify at trial, but maintained in his defense that Vincent fabricated the story. Petitioner argued that Vincent was having an affair with Sanchez and that Vincent had taken the money herself.

Following trial, the jury convicted Petitioner of possession of a deadly weapon by a person prohibited and simple menacing. The jury acquitted Petitioner of the remaining charges.

Pursuant to 11 Del. C. § 4214(a), Petitioner was sentenced as a habitual offender to 18 years imprisonment for the weapons conviction and 30 days imprisonment for the menacing charge. Petitioner obtained new counsel and appealed his conviction and sentence. The Delaware Supreme Court affirmed the judgment of the Superior Court. *Johnson v. State,* No. 525, 1999 (Del. Apr. 22, 2002). Petitioner did not file a state post-conviction motion.

By his Petition for federal habeas relief, Petitioner raises two claims both of which are based on alleged violations of Petitioner's due process rights under the Fourteenth Amendment. First, Petitioner contends that the trial court erroneously permitted the State to introduce evidence that Petitioner was convicted of three prior felonies, even though the State was required to prove only one prior felony to support the charge of possession of a deadly weapon by a person prohibited. Second, Petitioner contends that the trial judge erroneously failed to recuse himself from sentencing Petitioner. The State filed an Answer in response to the Petition, and Petitioner requested further briefing. The Court approved the parties' stipulated briefing schedule, and briefing has been completed according to that schedule. As such, this matter is ripe for the Court's review.

## STANDARD OF REVIEW

### I. Legal Principles Governing Exhaustion and Procedural Default

Pursuant to the federal habeas statute:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that -

(A) the applicant has exhausted the remedies available in the courts of the State; or

(B)(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1). Grounded on principles of comity, the requirement of exhaustion of state court remedies ensures that state courts have the initial opportunity to review federal constitutional challenges to state convictions. *Werts v. Vaughn,* 228 F.3d 178, 192 (3d Cir.2000), *cert. denied,* 532 U.S. 980, 121 S.Ct. 1621, 149 L.Ed.2d 483 (2001).

■ To satisfy the exhaustion requirement, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). Although a state prisoner need not "invoke extraordinary remedies" to satisfy exhaustion, he must fairly present each of his claims to the state courts. *Id.* at 844–45, 119 S.Ct. 1728. A claim has not been fairly presented unless it was presented "at all levels of state court adjudication." *Cristin v. Brennan,* 281 F.3d 404, 410 (3d Cir.2002). The petitioner bears the burden of establishing

that the exhaustion requirement has been satisfied. *Landano v. Rafferty,* 897 F.2d 661, 670–671 (3d Cir.1990).

■ If a claim has not been fairly presented, and further state court review is procedurally barred, the exhaustion requirement is deemed satisfied because further state court review is unavailable. *Lines v. Larkins,* 208 F.3d 153, 160 (3d Cir.2000), *cert. denied,* 531 U.S. 1082, 121 S.Ct. 785, 148 L.Ed.2d 681 (2001). Although deemed exhausted, such claims are nonetheless procedurally defaulted. *Lines,* 208 F.3d at 160. In addition, where a state court refuses to consider a petitioner's claims because he failed to comply with an independent and adequate state procedural rule, his claims are deemed exhausted but procedurally defaulted. *Harris v. Reed,* 489 U.S. 255, 263, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989); *Werts,* 228 F.3d at 192. A federal court may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or a fundamental miscarriage of justice. *Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Lines,* 208 F.3d at 160.

## II. Review Under the AEDPA

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") mandates the following standards of review:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1), (2). A federal court may issue a writ of habeas corpus under Section 2254(d)(1) only if it finds that the state court decision on the merits of a claim (1) was contrary to clearly established federal law, or (2) involved an unreasonable application of clearly established federal law. *Williams v. Taylor,* 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

■ Under the AEDPA, a state court's factual determinations are presumed correct. 28 U.S.C. § 2254(e)(1). The petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. *Id.* The presumption of correctness applies to both explicit and implicit findings of fact. *Campbell v. Vaughn,* 209 F.3d 280, 286 (3d Cir.2000), *cert. denied,* 531 U.S. 1084, 121 S.Ct. 789, 148 L.Ed.2d 685 (2001).

## DISCUSSION

### I. Petitioner's Claim That His Due Process Rights Were Violated By The State's Introduction Of Evidence Related To His Three Prior Felony Convictions

Petitioner contends that his Due Process rights under the Fourteenth Amendment were violated when the trial court permitted the State to introduce evidence that Petitioner had been convicted of three prior felonies, even though proof of only one prior felony was required for the State to support the weapons charge against Petitioner. Respondent contends that Petitioner failed to exhaust this claim, because he raised the issue of his felony convictions

solely as an evidentiary matter and not as a constitutional matter.

■ To exhaust state remedies, a petitioner must have presented the precise legal and factual basis of his federal claims to the state court. To this effect, the petitioner's "state court pleadings and briefs must demonstrate that he has presented the legal theory and supporting facts in his federal habeas petition." *Doctor v. Walters*, 96 F.3d 675, 678 (3d Cir. 1996). Although the petitioner need not cite " 'book and verse' of the federal constitution" to put the state court on notice that he or she is asserting a constitutional claim, the petitioner "must have communicated to the state courts in some way that they were asserting a claim predicated on federal law." *McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir.1999). Absent an explicit reference to federal law, the petitioner can communicate that he or she is asserting a federal claim in the following ways:

> (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claims in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

*Id.* (quoting *Daye v. Attorney General of New York*, 696 F.2d 186 (2d Cir.1982) (en banc)).

After reviewing the briefs filed by Petitioner on direct appeal and the arguments raised and the cases cited therein, the Court concludes that Petitioner's claim concerning the admission of evidence related to his three prior felony convictions was raised as a state law claim, and not as a federal due process constitutional claim. Petitioner's brief on direct appeal did not mention any due process analysis regarding this claim. Petitioner did cite to one federal case in his brief, *Old Chief v. United States*, 519 U.S. 172, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997). In *Old Chief,* the Court considered whether the State could introduce evidence regarding the nature of a prior offense to prove possession of a firearm by a prohibited person. However, the *Old Chief* decision was based on Rule 403 of the Federal Rules of Evidence, and not on any constitutional analysis. *See also Sims v. Larson,* 2002 WL 1497922 at *4 & n. 7 (N.D.Cal. Jul.2, 2002) (recognizing that *Old Chief* was "based entirely on the Federal Rules of Evidence rather than the Constitution"). That *Old Chief* was being cited to analogize Delaware Rule of Evidence 403 with Federal Rule of Evidence 403 was highlighted by Petitioner in his brief when he stated, "Although the application of Rule 403 as applied in *Old Chief* is not mandated in this case, it certainly stands as powerful precedent." (Op. Br. in No. 525, 1999 at 16). Because the petitioner raised his claim in terms of an evidentiary question, the Court cannot find that his claim called to mind a specific constitutional right or was within the mainstream of constitutional litigation.

Petitioner directs the Court to two sentences in his brief on direct appeal, which he contends gives the state court notice of his constitutional claim. First, in the Scope of Review section of his opening brief, Petitioner stated:

> In general, a claim that the trial court improperly admitted certain evidence is reviewed under an 'abuse of discretion' standard... This Court, however, reviews de novo questions of law and any claim that the admission of hearsay evidence violated the defendant's constitutional rights...

(A96) (citations omitted).

■ Reviewing this reference in the context of Petitioner's Opening Brief on

direct appeal, the Court concludes that it is insufficient to put the state court on notice that he was raising a federal constitutional claim regarding the admissibility of his three prior felony convictions. The sentence advanced by Petitioner was not presented in the merits of his argument. Under Delaware law, a Petitioner's failure to raise a claim in the text of his brief constitutes a waiver of that claim on appeal. *See Jackson v. State,* 643 A.2d 1360, n. 5 (Del. 1994) (distinguishing between claims raised "in the text of [an] opening brief" and claims raised in headings and table of contends and concluding that failure to raise an argument in the text constitutes a waiver of the argument); *Murphy v. State,* 632 A.2d 1150, 1152 (Del.1993). Further, the sentence highlighted by Petitioner specifically refers to claims involving the admission of hearsay evidence. However, Petitioner's claim regarding the admissibility of his prior felony convictions was not based on hearsay grounds. Accordingly, the Court cannot conclude that the reference to federal law for hearsay claims in the context of the Scope of Review was sufficient to put the state supreme court on notice that Petitioner was raising a federal claim when he challenged the admissibility of his prior felony convictions on grounds other than hearsay.

Second, Petitioner directs the Court to the first sentence in his "Argument" section of his Opening Brief:

> The trial court's decision to spurn the defendant's offer to stipulate to the fact that he was a convicted felon, and allow the State to parade the defendant's prior felony history before the jury, over objection by the defendant, was an abuse of discretion and *deprived defendant of his fundamental right to a fair trial.*

(A96) (emphasis added).

Reviewing this sentence in the context of the arguments made in Petitioner's Opening Brief, the Court likewise concludes that it is insufficient to put the state supreme court on notice that Petitioner was raising a federal constitutional claim. As the Court noted, Petitioner did not analyze his claim in constitutional terms and his reference to *Old Chief* as not binding on the state courts undermines Petitioner's argument that he raised a federal constitutional claim. *See e.g. Bright v. Snyder,* 218 F.Supp.2d 573, 578–579 (D.Del.2002) (holding that petitioner's reliance on a case which concluded that a defendant's "right to a fair trial" was violated was insufficient to place court on notice that petitioner was advancing a constitutional due process claim, because the decision was based on state law).

In addition, the Court finds further support in the State's Answering Brief on direct appeal for the Court's conclusion that Petitioner did not raise his evidentiary claim as a constitutional claim. The State's Answering Brief contains no federal constitutional analysis and analyzes the issue solely as a matter of state evidentiary law. *See Brown v. Cuyler,* 669 F.2d 155, 159 (3d Cir.1982) (holding that state's understanding of petitioner's argument as reflected in state's answering brief, may be probative on question of whether petitioner exhausted state remedies). Accordingly, the Court concludes that Petitioner has failed to establish that his claim was exhausted. *Duncan v. Henry,* 513 U.S. 364, 365, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995); *Dawson,* 988 F.Supp. at 809.

Where, as here, a petitioner's claim would be barred by Superior Court Criminal Rule 61(i)(3), state remedies are no longer available. *Dawson,* 988 F.Supp. at 803; *DeShields,* 830 F.Supp. at 822. Accordingly, the Court concludes that the exhaustion requirement is excused with respect to Petitioner's claim.

Although exhaustion is excused with regard to Petitioner's claims, the Court concludes that Petitioner's claims are procedurally barred. Petitioner did not raise his claims in the proceedings leading to the judgment of conviction in the state court, and therefore, Petitioner's claims would be procedurally barred in a subsequent post-conviction motion pursuant to Superior Court Rule 61(i)(3). Because Petitioner has procedurally defaulted his claims in the state court, federal habeas review of Petitioner's claims is precluded, unless Petitioner demonstrates cause for his failure to raise the issue in the state court and actual prejudice, or that a miscarriage of justice will result if the Court refuses to hear his claims. *See Coleman v. Thompson*, 501 U.S. 722, 750–51, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

In order to demonstrate cause for a procedural default, a petitioner must show "some objective factor external to the defense" precluded his compliance with state procedural rules. *McCleskey v. Zant*, 499 U.S. 467, 493, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991). In reviewing the record, the Court concludes that Petitioner has not alleged and the record does not reveal cause for the procedural default of Petitioner's claims.[2] Because Petitioner has failed to establish cause for his procedural default, the Court need not consider the question of actual prejudice. *See Smith v. Murray*, 477 U.S. 527, 533, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986); *Lawrie v. Snyder*, 9 F.Supp.2d 428, 453 (D.Del.1998).

However, even if the Court were to consider the question of actual prejudice, the Court would conclude that the record does not support a finding of actual prejudice. That Petitioner had three prior felony con-

victions was factually accurate, and the Court is aware of no rule limiting the prosecution to the presentation of just one piece of evidence in support of each element of an offense. *See Gonzalez v. De-Tella*, 127 F.3d 619, 621 (7th Cir.1997) (stating that "no rule of law, and certainly no rule of *constitutional* law, limits the prosecutor to one piece of evidence in support of each element of the offense" even when the element is uncontested and the defendant offers to admit to the element and citing *Old Chief*) (emphasis in original). Indeed, the prosecutor could properly admit evidence of Petitioner's other convictions to counter any attacks Petitioner might make on one or more of the convictions before the jury. *See United States v. Jones*, 266 F.3d 804, 812 (8th Cir.2001).

To the extent that Petitioner suggests that the jury was not given appropriate limiting instructions concerning the admission of these felony convictions, the Court disagrees with Petitioner. The jury was instructed that the evidence of Petitioner's prior convictions could not be used to infer that defendant was predisposed to commit crimes. (D.I. 16; Tr. of July 12, 1999 at 90). In addition, the Court observes that Petitioner was acquitted of the most serious charges in his case. The jury's acquittal undermines Petitioner's claim that he was actually prejudiced by the admission of his three felony convictions and demonstrates that the jury adhered to the court's limiting instruction. *See United States v. Sebetich*, 776 F.2d 412, 427 (3d Cir.1985).

Moreover, the Court concludes that Petitioner cannot establish that a miscarriage of justice will result if the Court does not consider Petitioner's claims. To establish a "miscarriage of justice," a petitioner

---

2. In his Opening Brief, Petitioner relies solely on the argument that his claim has been exhausted. Thus, Petitioner makes no argument related to the "cause and prejudice stan-

dard." In his Reply Brief, Petitioner does not mention his evidentiary claim, and relies only on his claim of judicial bias.

must show "that it is more likely than not that no reasonable juror would have convicted him." *Dawson,* 988 F.Supp. at 805 (citing *Schlup v. Delo,* 513 U.S. 298, 326, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995)). The miscarriage of justice exception applies only in extraordinary cases and is "concerned with actual innocence as compared to legal innocence." *Sawyer v. Whitley,* 505 U.S. 333, 339, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992).

In this case, Petitioner has presented no colorable evidence of his actual innocence. Indeed, Petitioner makes no claim that he is actually innocent. Thus, the Court concludes that Petitioner has not established that a miscarriage of justice will result if the Court does not consider the merits of Petitioner's claims. Accordingly, the Court will dismiss Petitioner's claim challenging the admissibility of his three prior felony convictions.

## II. Petitioner's Claim That The Trial Judge Erroneously Failed To Recuse Himself Giving Rise To An Appearance Of Bias In Violation Of Petitioner's Due Process Rights

Petitioner next contends that his due process right to have a "neutral and detached judge" was violated when the trial judge failed to *sua sponte* recuse himself under circumstances allegedly giving rise to an appearance of bias. The factual circumstances surrounding Petitioner's claim are not disputed and are as follows. Prior to Petitioner's sentencing on October 19, 1999, the trial judge met with counsel in his chambers. Defendant was not present at this meeting. The trial judge then disclosed to counsel that he had an out-of-court conversation with James Liguori, an attorney in Dover and a former Deputy Attorney General. The trial judge revealed that Liguori told him that "the defendant was a bad guy, that he had threat-

ened his family and himself, and he wanted to see that justice was done." Petitioner's attorney, Sandra Dean, then told the trial judge that Liguori had prosecuted Petitioner in 1981, and after the case was over, Petitioner sent Defendant a Christmas card that read "You had fun in '91 and will be free in '83." (A71). The prosecutor also revealed to the trial judge that he had some knowledge that Liguori claimed that he was threatened by Petitioner. Upon conclusion of the meeting, the trial judge asked Petitioner's counsel if she had any application based on the court's disclosure. Petitioner's counsel stated that because the incident happened a long time ago, and the court had stated that it would not give it any weight, she did not believe that any application would be made. However, Petitioner's counsel stated that she would discuss the matter with Petitioner to make sure. The record is silent as to whether this discussion took place.

The State agrees with Petitioner that this claim was presented to the Delaware Supreme Court on direct appeal, and the court rejected the claim on the merits. Thus, Petitioner has exhausted his state remedies with regard to his judicial bias claim.

In reviewing the merits of Petitioner's claim, the Court is bound by the AEDPA standard of review set forth by the Court previously. As such, the Court must determine whether the state court proceeding resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence presented in the state court.

Petitioner contends that the Delaware Supreme Court's decision on his appearance of bias claim was "contrary to" and involved "an unreasonable application" of

federal law, because the court improperly limited his appearance of bias claim to situations in which a judge engages in "active conduct demonstrating the appearance of impropriety." *Johnson v. State,* No. 525, 1999 at ¶¶ 11–12. Petitioner contends that the Delaware Supreme Court's holding is at odds with two Supreme Court cases, *Liteky v. United States,* 510 U.S. 540, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994) and *Liljeberg v. Health Services Acquisition Corp.,* 486 U.S. 847, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988).

▮ Reviewing the Delaware Supreme Court's decision in light of the applicable law, the Court concludes that the Delaware Supreme Court's decision is contrary to or an unreasonable application of federal law and an unreasonable application of the facts in light of the evidence. Although the *Liteky* and *Liljeberg* decisions involved the interpretation of Section 455, a federal statute pertaining to recusal, their analysis is instructive for due process claims based on a trial judge's appearance of impropriety. As the *Liljeberg* court observed, "The Due Process Clause 'may sometimes bar trial by judge who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties'. But to perform its high function in the best way, 'justice must satisfy the appearance of justice.'" 486 U.S. at 864 n. 12, 108 S.Ct. 2194 (quoting *In re Murchison,* 349 U.S. 133, 136, 75 S.Ct. 623, 99 L.Ed. 942 (1955)). Thus, "a fair trial in a fair tribunal is a basic requirement of due process," and the appearance of bias on the part of a trial judge may violate a petitioner's due process rights. *In re Murchison,* 349 U.S. at 136, 75 S.Ct. 623.

In analyzing the appearance of bias, the court is not limited to the actual or active conduct of a trial judge. Rather, as the *Liljeberg* court recognized, recusal may be

appropriate "even if the judge lacks actual knowledge of the facts indicating his interest or bias," if those facts give rise to an appearance of bias. *Liljeberg,* 486 U.S. at 859, 108 S.Ct. 2194; *Liteky,* 510 U.S. at 553, n. 2, 114 S.Ct. 1147 ("The judge does not have to be *subjectively* biased or prejudiced, so long as he *appears* to be so.") (emphasis in original); *Stevenson v. State,* 782 A.2d 249, 255 n. 2 (Del.2001) (en banc). In this case, it appears to the Court that the Delaware Supreme Court limited its analysis to the active conduct of the trial judge, an analysis which is inconsistent with the concept of an appearance of bias. In addition, the Court did not consider the impact of Liquori's comments that "he wanted to see that justice was done." In these circumstances, Liguori's *ex parte* "sentencing recommendation" could well create a situation in which a reasonable observer would question the trial judge's impartiality. Because the Delaware Supreme Court limited its analysis to the active conduct of the judge, it did not consider the reaction of the reasonable observer and the related risks of injustice to the parties and undermining the public's confidence in the judicial process that result from the continued participation of a judge in a proceeding despite the judge's appearance of bias. *See Stevenson,* 782 A.2d at 258. Thus, the Court concludes that the Delaware Supreme Court decision was not entirely consistent with federal law and was not a reasonable application of the facts in light of the evidence. Accordingly, the Court will grant the Petition to the extent that it challenges the trial judge's failure to recuse himself.

## CONCLUSION

For the reasons discussed, the Court will grant the Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody filed by Petitioner

Ronald N. Johnson. Petitioner's sentence will be vacated, and the Writ of Habeas Corpus shall issue unless the State grants Petitioner a new sentencing within 180 days.

An appropriate Order will be entered.

### ORDER

At Wilmington, this 14th day of March 2003, for the reasons set forth in the Memorandum Opinion issued this date;

IT IS HEREBY ORDERED that:

1. Petitioner Ronald N. Johnson's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (D.I.1) is GRANTED and Petitioner's sentence is VACATED.

2. The Court's Order is STAYED for a period of 180 days from the date of this Order to permit the State the opportunity to grant Petitioner a new sentencing. If Petitioner is not granted a new sentencing within the time specified, the Court will issue the Writ of Habeas Corpus.